Judge Ckehshaw
deliveréd the opinion of the Court.
This suit was brought in the Madison Circuit Court, in the name of William Wilson by his next friend, for the purpose of setting aside a conveyance, made by the complainant, William Wilson, to Oldham, on the 27th day of June, 1848.
The bill alleges, in substance, that the complainant, owing to the infirmities of old age, diseases, and dissipa.-ted habits, had been, for years, unable to protect himself against imposition and undue influence in the management of his estate; that on the 27th day of June, 1848, the defendant, well knowing his condition, by fraud and importunity, induced him ;to convey to him, defendant, with general warranty, a tract .of eighty five *56 acres of land; that the consideration, expressed in th6 deed, of $280, had not been paid, nor any part of it; that the tract of land, at the date of the deed, was worth at least the sum of $1000, and perhaps more— that he is still in possession of the land.
, The judgment of -'the Circuit '’Court.
The defendant answered, admitting that complainant is an old man, that the conveyance had been made for the consideration of $280, but he states that the allegation, that he had paid no part of the consideration, is untrue; that he had paid the sum of $80 at the date of the deed, and gave complainant two notes of $100 each, for the balance of the purchase money, and that he intends to pay them. He denies the other material allegation of the bill, and says that he is the owner of the land, and intends to coerce possession.
At the succeeding term of said Court, the defendant filed an amended answer, in which it is alleged that, instead of purchasing the land at the time the deed bears date, he made the purchase several years before, to-wit; in 1841, or about that time, when property was very low ; that the deed was made fairly, and without importunity, in compliance with this previous purchase; which was by parol contract; that, at the time of the purchase, and also when the conveyance was made, it was understood between him and complainant that complainant was to have the right to build a house on-any corner of the land he might think proper to select, and have five or six acres of ground for a-truck patch* and he and his daughter, Delphia, live there during his life. At the close of this answer* he again insists that the price agreed to be paid for the land was a full, and fair one, at the time the contract was made-.
Before the answers were filed, the defendant demurred to the bill, the Court overruled the demurrer, and the defendant still insisted in his answer that the bill was insufficient.
The Circuit Court, after requiring $59 25 cents, being as we suppose, in his opinion, the only sum including interest which had been paid of thepurcha.se mo- *57 né'y, to be brought into Court for the defendant; decreed, that the de.ed of conveyance and the two notes given for the purchase money, and also a receipt executed to the complainant by the defendant for a debt on Stephen James, to be cancelled and set aside.
Persbns íiióá pa-ble of acting for themselves, tho’ not idiots or lunatics may sue by next fiiend. Mitford’s Pleading, 30, and the addition of the words “by next friepd to his own naipe,” would not -ifitiate the proceeding.
It is now insisted that the Court below erred in not sustaining the demurrer to the bill; in granting relief to the complainant; and, particularly, in not requiring the complainant to pay to the defendant the sum of $80 with interest instead of the said sum of $59 25.
It is -contended by the counsel of the defendant, that a lunatic cannot sue by his next friend; that the suit must be brought in his own name, and not in the name of his committee. We think it a sufficient response tb this objection to say, that this question cannot arise in this case. William Wilson does not appear to be a lunatic, nor does he sue as such. The bill alleges that he is an old man of great mental weakness, “unable to pro tect himself against imposition and undue influence,” but not that he is a lunatic. And, in Mitford’s pleadings, side page, 30, it is laid down-, that-, “persons incapable of acting for themselves, though hot idiots or lunatics, or infants, have been permitted to sue by their next friend. But it will not be denied that the complainant, though a man of weak intellect, can sue in his own name without a nekt friend, and were there no authority upon the subject, we could not suppose that the mere addition to his own name of the phrase, “by his next friend Robert Wilson,” would vitiate his suit.
Our attention has been called to the doctrine of the law, as laid down by Lord Wynford, and quoted by Story, that, in order to impeach a conveyance on the ground of imbecility only, the imbecility must be such, as would justify a jury under a commission of lunacy in putting the vendor’s property and person under the protection of the chancellor. We regard this to be the true doctrine of the law. But the application to the chancellor in this case, to set aside the conveyance, is not made upon the ground of imbecility merely, but upon *58 the imbecility of the vendor, and the fraud and importunity of the vendee. And, Lord Wynford, after laying down the doctrine as quoted by Story, immediately adds: “But a degree of weakness of intellect, far below that which would justify such a proceeding* coupled with other circumstances, to show that the 'weakness, such as it was, had been taken advantage of, f will be sufficient to set aside any important deed.”
The acts and contracts of persons of weak intellect, & thereby liable to im-positiou, will be> held void by the Chancellor, if the act or contract of the party justify the con elusion that the party has been imposed upon, circumvented,of overcome by cun mn£ or undue in fluenca.
*58 Story then remarks: “The doctrine, therefore, may be laid down as generally true, that the acts and contracts of persons who are of weak understanding, and who are thereby liable to imposition, will be held void in Courts of equity, if the nature of the act or contract justify the conclusion that the party has not exercised a deliberate judgment, but has been imposed upon, circumvented, or overcome by cunning, or undue influence.”
Independently of the proof in the cause, it appears to us that the transaction itself, as developed by the amended answer, is not free from evidences of unfairness. In the first place a parol contract for the sale and purchase of the land, is made in 1841; not a cent of the purchase money is then paid* and no change of the possession takes place; the vendor remains upon the land for six years, and then and not before, a deed is made which the defendant acknowledges does not recite the whole contract; the only important and beneficial part of it to the complainant, being left out — that of having reserved to him the poor privilege of selecting a truck patch of five or six acres in some corner of the land. It is strange, to say the least of it, that the vendor should desire to sell his land, and the vendee to' purchase it in the year 1841, and that the contract should then be made, and yet that it should not be consummated till June, 1848.
When, however, the testimony is examined, and considered, in connection with the developments of the amended answer, we think there is little orno room left ^or doubt,, Although several of the witnesses say, that *59 in their opinion, the mind of the complainant is as good ns other ordinary minds of his age, yet the proof is, that he is quite an old man, feeble, not only in body but jn mind, that he has rarely gone from home for many years; and Baxter, the man who W'as called upon by the defendant to write the deed, and who lives in three miles of the complainant, says that he never saw him as far from home as his house, except upon the day the deed was prepared, but once, and that was about twenty years ago; that he is easy to be operated on by importunity; that age and other causes have enfeebled his mind ; that the complainant had, within the last five or six years, offered to sell him the land more than once, but he declined purchasing, believing that he could get it for less than half its value.
It is in proof by another witness, that he has lived in, the neighborhood of the complainant for ten years, and pever knew him to be off his place but once, and that was the time when the deed was made at Baxters.
It is unnecessary to make further reference to any particular witnesses in regard to the infirmities of the old man. It is sufficient to say, that the proof establishes to the satisfaction of our minds that he is a man of very weak intellect, and susceptible of being easily overreached.
Immediately upon executing the deed, he turned to the defendant and enquired for his money; the defendant replied, that he did not have the money, and that it would be better for complainant not to have it.
He seemed not to be conscious how the consideration, was to be paid. Whilst he was thinking that he was to get the money, the snm of eighty dollars was arranged without the payment of a single dollar, and notes were* given for the remainder of the consideration; and these notes not taken away by him, but left with Baxter. He was mere clay in the hancjs of the potter, Oldham, to> be shaped and fashioned according to his own taste. The old man is said to haye had great confidence -in,-Oldham, and Oldham is said to be- a shrewd man.
A-. contract for the purchase of a tract of land, worth twice the contract price, made with an old ignorant man, with a purchaser of shrewdness, and having great influence with the vendor: held to be illegal and un obligatory and the conveyance s^et aside.
Turner for plaintiff; Carpenter and Bwrnam for defendant.
Although, at the time of the alleged parol contract* land and every thing else were depressed in value, yet in June, 1848, when the conveyance was executed, this land which was sold for $280, is proven to have been, worth twice this sum. Indeed some of the witnesses estimate it as high as $10 or $12 per acre.
To sustain a contract made under such circumstances, would be to encourage the arts and wiles of the wicked,"the shrewd, and the cunning, to the ruin of the weak and the innocent. Mere weakness of intellect is not alone sufficient to set aside a contract made with-, out the . practice of fraud or unfairness ; but, when made, as we are constrained to believe this was, by the exercise of an undue and improper influence upon a confiding, ignorant, and exceedingly weak-minded old man, it ought not, in our opinion to receive the sanction of a Court of justice.
In regard to. the sum of $30, a claim on Stephen James, which it- is alleged the complainant had agreed to pay, and which was received by him in part pay for the land, we need only remark that it does not appear that the complainant was ever legally bound to pay this claim. Moreover, it is proved by James that the true amount of this claim was twenty instead of thirty dollars, and that he still owes it to Oldham. The receipt for it executed by Oldham to th.e complainant when the deed was made is set aside by the decree, and he has been restored to his claim on James, and we perceive no error in this.
Wherefore the decree of the Court below is affirmed.