Syllabus.

JONAH KUHIO KALANIANAOLE *v.* LILIUOKALANI, BY HER GUARDIAN AD LITEM, LORRIN ANDREWS; CURTIS P. IAUKEA, WILLIAM O. SMITH, AND SAMUEL M. DAMON, TRUSTEES; CURTIS P. IAUKEA, JOHN A. DOMINIS, NAKANE-ALOHA, ANAOLE, KELIIAKAHAI, MRS. KA-MAKA VON OELHOFFEN, NAHEANA PAIA, HA-KAUI AND KAINALU HIS WIFE; MARY K. KA-HALEPUNA, S. K. MAHOE AND EMALIA HIS WIFE; AKI, SISTER OF MAHIAI ROBINSON, MRS. MARY AULD, MARY PAHAU, MRS. KALE-HUA, GEORGE NÁPAHUELUA, AND GEORGE KAHILINAI, HIS SON.

No. 948.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

HON. T. B. STUART, JUDGE.

ARGUED AUGUST 3, 1916.    DECIDED AUGUST 16, 1916.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

APPEAL AND ERROR—*what constitutes final order.*

What constitutes a final decision or order for the purpose of appeal depends rather upon the nature and effect of the decision than on the stage at which it is rendered. An order determining that a respondent in a suit in equity alleged to be of weak mind and under the undue influence and domination of another may appear, and would be recognized, only through a guardian *ad litem* appointed by the court, the alleged weakness of mind and undue influence being controverted, is a final and appealable order.

SAME—*review of interlocutory rulings.*

An appeal from a final order in a suit in equity brings up for review all interlocutory rulings which affected the appellant, but not those which affected only a co-party who has not appealed, and which did not enter into the order appealed from.

INSANE PERSONS—*persons under undue influence—appointment of next friend or guardian ad litem.*

A next friend or guardian *ad litem* may be appointed for a

person who, though not insane, is alleged to be weak minded and, because of the undue influence and domination of another, is not a free agent. But where an issue is raised by the party's denial of such weak mindedness and undue influence, that issue must be heard and determined *in limine* and before further steps are taken in the suit.

EQUITY—*pleading—interest of complainant in subject matter.*

A bill in equity is demurrable which does not show that the complainant has an interest in the subject matter of the suit. The next of kin of a living person has no estate or interest at law or in equity in the property of that person. *Nemo est haeres viventis.*

OPINION OF THE COURT BY ROBERTSON, C.J.

The record in this case shows, *inter alia,* that on the 30th day of November, 1915, Jonah Kuhio Kalanianaole, on his own behalf and as next friend of Liliuokalani (former Queen of Hawaii) filed a bill in equity averring mental weakness on the part of the Queen, and a conspiracy and undue influence on the part of the respondents Iaukea and Dominis, resulting in the execution by the Queen of a certain deed of trust, on the 2d day of December, 1909, under which the said Iaukea and Dominis were among the beneficiaries, and certain subsequently executed instruments purporting to confirm and supplement the trust deed. The prayer of the bill was that all said instruments and a certain power of attorney given by the Queen to said Iaukea be annulled and cancelled, and that the trustees be directed to reconvey and deliver the property described in the deed to the Queen. Upon the bill process issued by direction of the circuit judge. On December 16, Mr. Antonio Perry entered his appearance as attorney for the Queen, and, on December 30, filed, on her behalf, a discontinuance and motion to dismiss based upon the affidavit of the Queen "that the said bill of complaint herein was filed and the above entitled suit was instituted without her authority,

consent or knowledge; that she has not since its institution in any way ratified the bringing or the maintenance of this suit; that she disapproves of its institution and its maintenance; and that she desires that the suit be terminated and dismissed." Thereupon counsel for the complainants filed motions to strike from the files the appearance of said Perry and the discontinuance and motion to dismiss filed by him on the ground that they were not "authorized by law or the facts and record in this case." On January 10, 1916, the respondents filed demurrers to the bill, and later moved for the removal of Kalanianaole as next friend of the Queen on the ground of interest. These several matters were argued by respective counsel, and on February 7, the circuit judge rendered his decision overruling the demurrers, denying the motions to strike from the files the appearance of counsel for the Queen and the Queen's motion and affidavit, but overruling her motion to dismiss the case, saying that he regarded her affidavit as a claim of mental capacity and an objection to the continuance of Kalanianaole as her next friend, and appointing Mr. Lorrin Andrews, an attorney of this court, as next friend in place of Kalanianaole, who was removed. On February 8, the Queen filed an affidavit entitled "Assertion of Mental Competency," as follows:

"Pursuant to the decision of the court filed herein on the 7th day of February, 1916, and the leave to amend therein granted, by way of supplement and amendment to her discontinuance and motion to dismiss heretofore filed herein, and not waiving her contention and claim that the said discontinuance and motion to dismiss are sufficient of themselves without this express denial of mental incompetency and assertion of mental competency, the above mentioned Liliuokalani, in whose name and behalf the above entitled suit purports to be brought by an alleged next friend, does hereby deny the truth of any and all charges, direct or indirect, that may be contained in the bill of complaint herein filed in the above entitled court and cause by Jonah Kuhio

Kalanianaole in his own behalf and as her alleged next friend or that may be otherwise howsoever made herein, that she is or at the time of the institution of this suit was of unsound mind or mentally incompetent to protect her interests in this suit or in the property involved herein and does hereby claim and assert that at the time of the institution of the above entitled suit she was, ever since has been and now is of sound mind and mentally competent to terminate, withdraw and discontinue this suit and the bill of complaint herein, to do all things incidental to the preparation and prosecution of the discontinuance and motion herein filed by her, to protect all of her interests in this suit and in the property involved herein, to transact all other matters of business and to take all other action whatsoever.

"And all of this the said Liliuokalani is ready to prove and asks an opportunity to prove,—without waiving her claim that the burden is, not on her to prove her sanity or mental competency, but on anyone, who alleges that she is insane or mentally incompetent, to prove the said alleged insanity or mental incompetency.

"Liliuokalani.

"Dated, Honolulu, T.H.,
    "February 8th, 1916.

"Territory of Hawaii,
City and County of Honolulu, } ss.

"The aforesaid Liliuokalani being first duly sworn, on oath deposes and says that she has read the foregoing document and knows the contents thereof and that the matters and things therein stated and set forth are true, of her own knowledge.

"Liliuokalani.

"Subscribed and sworn to this 8th day of February, 1916.
        "W. J. Robinson
    "Notary Public, First Judicial
    Circuit, Territory of Hawaii."
(Notarial Seal.)

This was accompanied with a notice to counsel for the complainants that the court would be asked "to set a time for the holding of the inquiry into and the taking of evi-

dence upon the question of my (the Queen's) mental competency to terminate the above entitled suit and to move to dismiss it and in these and other ways to protect my interests therein and in the property therein involved." On February 11, the Queen filed an "Objection and Protest" against any further proceedings being had in the case until after her mental competency to discontinue the suit and the force and effect of the discontinuance filed by her shall have been judicially inquired into and determined, asserting herself to be of sound mind and mentally competent to terminate the suit, and claiming that the court was without jurisdiction to take any steps in the cause other than to hold an inquiry as to her mental competency or to declare the suit dismissed. Upon this the circuit judge ruled that the position asserted by the Queen was not well taken, and held that while he would consider the claim of the Queen to mental competency he would not take it up preliminarily, but in connection with the other issues in the case. The Queen then applied to this court for a writ of prohibition to restrain the circuit judge from taking any further steps in the case until after making an inquiry into and determining the question of her present mental capacity. This court held that the presumption of competency prevailed in favor of the Queen; that she had the right to control the suit so far as she was concerned, and to discontinue the same as she had done; that upon the filing of the discontinuance she ceased to be a party to the suit; that having ceased to be a party, she was not entitled, under the statute, to maintain the writ; and that the circuit judge was not without jurisdiction to determine whether Kalanianaole could maintain the suit in his own behalf. In denying a motion for a rehearing this court took occasion to point out that the main suit was predicated upon the ground of undue influence which presupposes mental competency, and insanity was not averred in the bill. The Queen then filed a motion, based upon the ruling made by

this court, that a decree be entered by the circuit judge declaring the suit to have been discontinued so far as the complainant Liliuokalani was concerned. On March 27, counsel for Kalanianaole moved for leave to amend the bill of complaint by adding the averment

"That at the time when said instrument, Exhibit A" (the trust deed) "was made and executed, and at all times since up to the time of this amendment, the said Queen was not of sound mind and was not mentally competent to make said alleged deed of trust (Exhibit A) and to make and execute the other instruments thereafter referred to in this bill, or any of them; and that she is not mentally competent to protect her interests in this suit or in the property involved herein, and to employ counsel, and to do all things incidental and necessary to the prosecution of the said suit, or any of these things, and that it is necessary that some proper person should be appointed as her next friend and guardian in this litigation,"
also to amend the prayer by inserting the clause

"That a next friend or guardian *ad litem* be appointed by this court for the said Queen, who shall act for and in behalf of the said Queen in this matter."

The court allowed the amendment to be made to the bill; granted the Queen's motion that she be dismissed as a party complainant; held that as she was a necessary party to the suit she should be made a respondent, and directed that the transposition be made; continued Mr. Andrews as guardian *ad litem* for the Queen; and said that the matter of Mr. Perry's authority to further appear in the case would probably be taken up thereafter. In the meantime Mr. Andrews, as next friend of the Queen, had reported to the court that, among other things, he had been informed by the Queen that she had not employed Mr. Perry to represent her. On March 30, Mr. Andrews, as guardian *ad litem*, filed a petition in which, after reviewing the proceedings had with reference to his appointment as next friend and as guardian *ad litem*, he stated,

"That your petitioner, after conversing with said Liliu-

okalani and carefully examining a number of witnesses as to the alleged making of the trust deed in the year 1909, which is the subject of this controversy, and as to the present condition of said Liliuokalani, is satisfied that not only was the said trust deed as made and executed an improper and improvident deed, but that it is clear that said deed was not the act and wish of said Liliuokalani but due to the control exercised over her by others, and that at the time of the making of said deed she was in no physical or mental condition to make the same or understand the provisions thereof, and that she did not understand the provisions thereof; but that also her present condition is such that she is incapable of understanding the proceedings that are being carried on, or to guard her rights, or to act other than under the influence of those in whose control she is, and that she is incompetent to defend herself in courts of law in her proper person;"

and prayed that he be allowed to file, on the Queen's behalf the answer and cross bill attached to the petition, and to present proof of the allegations made therein. Thereupon the circuit judge made and entered an order confirming the appointment of Mr. Andrews as guardian *ad litem* for the Queen, and that he be allowed to file the answer and cross bill, and directing that the same be served upon the attorneys for the several respondents and upon the attorneys for the complainant within twenty-four hours, and that the respondents and complainant answer thereto within ten days after service. The answer and cross bill, which was filed, admitted and adopted all the averments contained in the amended bill of the complainant; averred that the Queen, at the time of the making of said deed of trust and other instruments, by reason of the progressive weakness of old age and her impaired mental faculties was not of sound mind or mentally capable of making said deed and other instruments or of understanding the contents and effect thereof; and was entirely under the influence and control of the said respondents Iaukea and Dominis; and prayed that said instruments be annulled and can-

celled, and for a reconveyance by the trustees. On April 1, the Queen, through her attorney, Mr. Perry, filed a written waiver of service of the bill of complaint, and amendments thereto, of the said Kalanianaole, and of summons thereon, and entered her appearance in the suit as a party respondent; also a demurrer to the bill of complaint as amended on the grounds of lack of equity in the bill and that the said Kalanianaole has no interest in the subject matter of the suit. Similar demurrers were filed by other of the respondents. The Queen, by her attorney, filed also a motion to strike from the files the petition of the guardian *ad litem* for leave to file an answer and cross bill, the order confirming the appointment of the guardian *ad litem* and granting the leave asked, and the answer and cross bill of the guardian *ad litem,* on the ground, in substance, that the answer and cross bill, in effect, made the Queen a complainant contrary to her rights in the premises and her discontinuance theretofore filed, and in violation of the law and the decision of this court in the prohibition proceeding. On April 4, Mr. Andrews, as guardian *ad litem,* filed motions to strike from the files the waiver of service and general appearance, the demurrer, and the motion to strike from the files the answer and cross bill, etc., "signed and filed by one Antonio Perry, claiming to be attorney for said Liliuokalani," on the grounds that the record showed that he, the said Andrews, is the guardian *ad litem* of the Queen and had obtained permission to file said answer and cross bill on her behalf, and that the said Antonio Perry was not, is not now, and never has been the attorney for the Queen. A similar motion was filed by counsel for Kalanianaole, based on the ground that it appeared from the record that said Andrews had been duly appointed as guardian *ad litem* of the Queen, and said Perry was not entitled to file said papers. On the same day argument was had on these several motions and demurrers. Mr. Perry urged, among other things, that the

so-called appointment of Mr. Andrews as guardian *ad litem* of the Queen was ineffectual in view of the assertion of the Queen, theretofore made, of her mental competency and right to control her own case, and offered to produce testimony to show that he had been employed by the Queen personally to act as her attorney in the case. The circuit judge ruled that the issue as to the Queen's mental condition would be allowed to stand and that it would be tried under the allegations of the bill of complaint, but that the Queen was under guardianship and had no right to appear independently of the guardian *ad litem,* and that Mr. Perry had not been employed by the Queen and could not appear for her and interfere with the guardian *ad litem,* also that Mr. Perry had no right to file the papers filed by him on behalf of the Queen. On the following day the circuit judge filed his rulings in writing, sustaining the motions of the guardian *ad litem* and the complainant, and striking from the files the papers filed by Mr. Perry as attorney for the Queen, and overruling the demurrers of the respondents.

The case comes to this court upon an appeal perfected by the Queen. The first question to be determined is whether the appeal lies. This point is intimately connected with the next one to be taken up, that is, whether the question of the Queen's present status should be inquired into and determined *in limine.* Counsel for the complainant contend that no final order was made by the circuit judge and that the appeal should therefore be dismissed. The statute provides that "Appeals shall be allowed from all decisions, judgments, orders or decrees of circuit judges in chambers, to the supreme court, except in cases in which the appellant is entitled to appeal to a jury." R. L. 1915, Sec. 2508. The uniform construction of this provision has been that to be appealable the order or decree in question must have been a final one. But this construction has been

applied with appropriate liberality, and appeals from orders final in their nature, though not determinative of the whole case upon its merits, as well as from final decrees in the strict sense of the term, have been entertained by this court. "The statute does not expressly confine appeals to *final* judgments, orders and decrees, but it has been so construed by this court in numerous cases. And yet this court has also recognized that a final decision for the purpose of appeal is not necessarily the last decision in the case and that its nature and effect rather than the stage at which it is rendered is the true test." *Dole* v. *Gear,* 14 Haw. 554, 566. See *Barthrop* v. *Kona Coffee Co.,* 10 Haw. 398, 400; *Humburg* v. *Namura,* 13 Haw. 702, 705; *Estate of Enos,* 18 Haw. 542, 546; *Scott* v. *Stuart,* 22 Haw. 641. In the case of *Eau Claire* v. *Payson,* 107 Fed. 552, 557, the court said, "The supreme court has not placed upon the words 'final decree,' respecting the right of appeal, a strict and technical sense, but has given them a liberal and reasonable construction." In *Estate of Silva,* 15 Haw. 13, it was held that an order may be final as to one party and appealable by him though the case be not determined as to other parties to the suit. Also, it is held, an order which determines and disposes of the rights of the parties with reference to a material portion of a case, or a matter distinct from the general subject of the litigation, is generally to be regarded as a final order. *Honolulu Athletic Park* v. *Lowry,* 22 Haw. 733, 738; *Williams* v. *Morgan,* 111 U. S. 684, 699; *Central Trust Co.* v. *Grant Locomotive Works,* 135 U. S. 207, 224. And in *May* v. *Hardin,* 52 Ky. 344, it was held that an order determining, *in limine,* a question as to who had the right to the control of the suit and its proceeds, as it materially affected the rights of the parties and was obviously prejudicial to the party against whom the question was decided, was a final order.

In the case at bar, after the Queen had been made a

party respondent, she appeared through the attorney who claimed to have been employed to represent her, and interposed a demurrer to the bill of complaint. The guardian *ad litem* moved to strike the appearance and demurrer from the files on the ground that he alone was authorized to represent the Queen and that Mr. Perry was not and never had been her attorney in the suit. The circuit judge ignored Mr. Perry's offer of his own and other testimony to show that he had been directly employed by the Queen; held that he had not been so employed, and that the Queen could not appear in the case independently of the guardian *ad litem;* and sustained the motions of the guardian *ad litem,* also the similar motion of the complainant. The circuit judge held in a vague sort of way that the issue as to the present mental condition of the Queen would be tried "under the allegations of the complaint," but how and by whom it was to be tried was not made clear. It would seem that the answer and cross bill which the guardian *ad litem* had been allowed to file on behalf of the Queen, which admitted all the allegations of the complainant's bill and affirmatively set up her present incompetency to act for herself had effectually eliminated from the case the very issue which the assertion of competency previously made by the Queen through Mr. Perry was supposed to have raised. It is clear that the effect of the rulings of the circuit judge was to deny the Queen the right to appear in her own behalf, and to recognize her as a party only through the guardian *ad litem,* the validity of whose appointment and right to represent the Queen was purportedly, at least, attacked by the Queen herself. The issue as to whether the suit so far as the Queen was concerned was to be controlled by the guardian *ad litem* or by the Queen through counsel of her own choosing was a vital one and it was definitely disposed of by the rulings made.

We hold that the order was final and that this appeal should be entertained.

The next point is as to whether the question as to the present status and condition of the Queen should have been taken up and decided by the circuit judge before any further steps were taken, and whether he was in error in postponing its consideration. We have found little in the books, other than dicta, which throws light on the subject, though upon principle the answer seems clear. Counsel for the complainant contend that it was within the discretion of the circuit judge to take the matter up *in limine* or to consider and pass upon it in connection with the proofs upon the merits of the case. They refer to the cases of *Lindly* v. *Lindly,* 109 S. W. (Tex.) 467, 102 Tex. 135; *Holland* v. *Riggs,* 116 S. W. (Tex.) 167; *Kroehl* v. *Taylor,* 69 N. J. E. 525; *Smith* v. *Smith,* 106 N. C. 498; *Snowden* v. *Smith,* 119 S. W. (Ky.) 785, and other cases. In the *Lindly* case the court of civil appeals said, "It was a matter of discretion with the trial court as to whether he would inquire into the mental condition of Sally Lindly *in limine,* or hear the evidence, and submit the question to the jury along with the other issues in the case," but there was no discussion of the principle involved either by that court or the supreme court of Texas. We think the other cases cited do not go to the full extent of sustaining the contention made in the case at bar. Counsel for the Queen repeatedly urged in the court below that the issue having been raised by the Queen's assertion it should be considered and decided *in limine,* and he now contends that the refusal of the circuit judge to adopt that course was reversible error. The contention would apply with equal force whether the Queen be a complainant or a respondent. In the case of *Howard* v. *Howard,* 87 Ky. 616, 622, the court said,

"The law presumes all persons to be of sound mind, and

if adults, capable of managing their own affairs; and the mere fact that it is alleged by a person styling himself next friend, that a particular individual, who is an adult, is of weak or unsound mind, and not capable of taking care of his own affairs, does not destroy that presumption. But where the action is brought in the name of the person alleged to be of weak or unsound mind, by his next friend, against parties having an interest in the subject-matter, it is to be presumed, in the absence of anything appearing to the contrary, that whatever consent such person is capable of giving to the bringing of the action has been obtained; and that it is in fact his suit, for it is really in his name; and that he has obtained the consent of a friend, as the most competent person by whom he wishes his case to be conducted, in order that his rights may be the better protected. But if he makes known to the court that it is not his suit; that he is competent to take care of his own affairs; that the supposed friend is in fact an intermeddler, the court in such a state of case is presented with the question: What is the proper course to pursue?"

And it was pointed out that the question should be determined *in limine.* That case was referred to with approval in *Isle* v. *Cranby,* 199 Ill. 39, 47. In *Whetstone* v. *Whetstone's Ex'rs.,* 75 Ala. 495, 501, the court said,

"We have said that the right of a mere volunteer to institute a suit as next friend of a non-adjudged non compos rests under limitations. * * * The welfare and interest of the alleged non compos are matters of prime, dominating importance, and should receive the careful consideration of the court, before the litigation is allowed to progress. These preliminary inquiries should be first instituted; and to this end the chancellor may require the verdict of a jury, or a report from the register, so as to properly inform his conscience."

See also *Campbells* v. *Bowen,* 1 Rob. (Va.) 241; *Lee* v. *Ryder,* 56 Eng. Reprint 1103; *Denny* v. *Denny,* 8 Allen 311. Doubtless an *ex parte* allegation of insanity or mental incompetence, or of mental weakness and undue influence destroying free agency, would warrant a court in appoint-

ing a next friend or guardian *ad litem*. But such would not be the case where, at the time of the purported appointment, the party in question has placed before the court a denial of such incompetency, nor would it justify the court in continuing an appointment previously made after such denial has been interposed, except upon adjudication of the fact of incompetency after a judicial inquiry. It would present an intolerable situation that a party litigant should be represented by a next friend or a guardian *ad litem* on the theory that he is incompetent, and also by an attorney of his own selection on the theory that he is competent, each representative filing inconsistent pleadings and insisting on conducting the case as he should deem best. Upon principle there would seem to be no room for the theory that the trial judge has the discretion to decide the issue as to the party's competency in connection with the merits of the case for the question would not down as to which of the representatives should be allowed to frame the issues and conduct the case or discontinue it. If the party be in fact competent he is entitled under the law to appear in person or through a representative of his own choice, and if he be in fact incompetent his only representative should be the appointee of the court. The obvious answer to all this is that when in any case the alleged incompetency is denied by the alleged incompetent the court must hear and determine the issue *in limine* and before further steps be taken in the cause. We hold that the circuit judge erred in not taking that course in this case. Here, the error was emphasized by the fact that the circuit judge, while expressly declining to make a finding as to the Queen's present status or condition, permitted the guardian *ad litem,* who could have a standing in court only in case the Queen be in fact incompetent, to file an answer and cross bill averring her incapacity, the legal effect of which was to supplant her former assertion of competency.

Though the Queen is the sole appellant in this case, counsel for the trustees and most of the other respondents have appeared and argued that as an appeal from a final order or decree brings up for review all interlocutory rulings made in the court below they are entitled to be heard upon their demurrers which, it is contended, were erroneously overruled by the circuit judge. They cite the cases of *Scott* v. *Stuart,* 22 Haw. 641, and *Lee Chu* v. *Noar,* 14 Haw. 648, which are authority for the proposition that upon an appeal from a final order or decree by a sole party all interlocutory rulings are reviewable. But they are not authority for the contention that upon the appeal of one party interlocutory rulings which adversely affected a co-party who has not appealed and is not in a position to appeal, and which did not enter into the order appealed from, may be reviewed. Nor have we been referred to any authority which so holds. We are of the opinion that the rulings upon the demurrers of the respondents are not now before us, though they will be disposed of by what we have to say.

Counsel for the Queen further urges that, in the event that this court shall sustain the appeal and find reversible error in the record, and if it should be of the opinion that the demurrer of the Queen to the bill of complaint ought to be sustained, it would be appropriate for this court to so express itself, especially as the circuit judge, when striking the demurrer from the files, had stated that he otherwise would have overruled it. And counsel points out that if this court should believe that the demurrer ought to be sustained a long, expensive and useless trial might be obviated by making a ruling in accordance with his contention that Kalanianaole, as sole complainant, is not entitled to maintain the suit since he has no interest in the subject-matter thereof. We think this position is sound. As, upon the views above expressed, there must be a reversal and further proceedings, we believe that we should

fall short of doing our full duty in the premises, if, being of the opinion that the bill should be dismissed, we failed to so state.

The property conveyed is averred in the bill to be that of the Queen, and the prayer is that it be reconveyed to her. There is no averment that the complainant has any present interest in the property, but merely that he is the Queen's "only next of kin and heir at law." It is elementary that in order to maintain a suit in equity the complainant must have an interest in the subject-matter of the suit, and that a bill is demurrable which fails to show such interest. *Palau* v. *Helemano Land Co.,* 22 Haw. 357; 1 Beach, Mod. Eq. Pr., Sec. 261. The next of kin of a living person has no estate or interest at law or in equity in the property of that person, and may never have any, for the owner may dispose of the property during his lifetime or devise it to others by will. The next of kin may not outlive the owner of the property. "The title of an heir is called into existence by the *death* of the ancestor, for *nemo est haeres viventis.*" 3 Washburn, Real Prop. (4th ed.), 6. And until the ancestor dies the heir apparent or presumptive has nothing more than a mere possibility, expectancy or hope of succession unfounded in any legal act whatever. 22 Am. & Eng. Enc. Law (2d ed.) 1034. See *Dursley* v. *Fitzhardinge,* 6 Ves. 251, 260; *Allan* v. *Allan,* 15 Ves. 130; *In re Parsons,* L. R. 45 Ch. Div. 51, 57; *In re Bartles,* 33 N. J. E. 46; *Youngs* v. *Heffner,* 36 Oh. St. 232, 238. The case of *Sellman* v. *Sellman,* 63 Md. 520, was a suit to set aside a conveyance made by a feeble minded person under the undue influence of the grantee. The complainants were the children and grandchildren of the grantor. A decree sustaining a demurrer and dismissing the bill was affirmed, the court saying (p. 522),

"It is a fundamental principle of equity pleading that, to entitle a party to sustain a bill, he must show an interest

in the subject of the suit, or a right to the thing demanded, and proper title to institute the suit concerning it; and if such interest or right to sue be not fully shown by the bill itself, the defendant may demur. * * * And this being the requisite in pleading, the complainants, upon the maxim *nemo est haeres viventis,* can have no standing in court; for that maxim is of equal force in equity as at law. The children and grandchildren of a living ancestor cannot claim a right or maintain a suit in respect to the property of that ancestor, while their interest in such property is merely in expectancy, depending upon a future inheritance that, by possibility, may never occur. The principle is, both at law and in equity, that no one is entitled to be recognized as heir until the death of the ancestor, or the person from whom the descent may be cast; and the fact that such ancestor or other person may be alleged and admitted to be *non compos mentis,* or otherwise incapable of managing his estate, makes no exception to the general principle." See also *Bradford* v. *McKenzie,* 43 Atl. (Md.) 923.

We think it is clear, therefore, that Kalanianaole, as sole complainant, may not maintain the suit since he has no interest in the subject-matter.

Having gone this far, we are impelled to go further. We believe that some of the mistakes which have been made in this case have resulted from an error made by this court. In discharging the temporary writ of prohibition which the Queen had sued out we held—and properly so—that the bill of complaint did not aver insanity on the part of the Queen, but mental weakness and undue influence which presupposes mental competency; but we erred in holding that the Queen was therefore entitled to discontinue the suit as she had done. The writ was properly discharged since the circuit judge was not proceeding without jurisdiction, but our reasoning did not reach the root of the matter. It was averred in the bill that the Queen is of the age of seventy-seven years; that her memory has been seriously impaired by bodily infirmities, worry and anxiety; that the

respondent Iaukea was her business agent and personal friend upon whom she relied for advice; that the respondent Dominis is a young man who was brought up in the Queen's household; that the said Iaukea and Dominis conspired together to obtain a disposition by the Queen of her property in such form as they might profit thereby, and procured the execution of the deed of trust in which they and others are named as beneficiaries; that the deed of trust and other instruments mentioned in the bill did not and do not express the wishes and desires of the Queen, and were not and are not her free and voluntary act and deed; that at all the times mentioned in the bill said Iaukea and Dominis have unlawfully and fraudulently conspired and confederated together for the purpose of obtaining control of the property and person of the Queen and of imposing their wills upon her, and have prevented and do now prevent her from obtaining the advice of loyal friends; and that by reason of the undue and improper influence exerted over the Queen by said Iaukea and Dominis she is in fear; and under the absolute domination of them and cannot now act freely and independently. The charge, therefore, was not of mental incompetency, but of a weakened mind which had been, and is being, subjected to the domination of the said respondents. It was not enough to say that the presumption of sanity or mental competency prevailed in favor of the Queen, for if, at the time this suit was instituted, she, though sane, was still subject to the same domination under which, it is averred, she executed the deed of trust, and was not a free agent, the suit could be brought and maintained in her name and behalf by a next friend appointed by the court. That is to say, if the fact be that the execution by the Queen of the deed in question was procured in the fraudulent manner set forth in the bill, she could now, if a free agent and mentally competent, maintain such a suit as this in her own right and be-

half, and if she is not now a free agent because of the undue influence and control of others the same relief may be sought in her name and behalf by a next friend. "Where persons are incapable of acting for themselves, although not strictly either idiots or lunatics, the suit may be brought in their name, and the court will authorize some suitable person to carry it on as their next friend." Story, Eq. Pl., Sec. 66. See also 3 Pom., Eq. Jur., Sec. 1314; *In re Kronberg,* 208 Fed. 203; *Edwards* v. *Edwards,* 36 S. W. (Tex.) 1080; *Lamb* v. *Lamb,* 23 Atl. (N. J.) 1009; *Wilson* v. *Oldham,* 51 Ky. 55; *Sumner* v. *Perry,* 11 Haw. 372. Although the "Assertion of Mental Competency" filed by the Queen seemed to assume that mental incompetency was averred in the bill, as counsel for Kalanianaole have contended it was, that paper and the "Objection and Protest" filed by her sufficiently challenged the averments of existing undue influence and control on the part of Iaukea and Dominis, and lack of free agency on the part of the Queen, so as to raise an immediate issue in regard to the Queen's condition and status at the time of the filing of the bill. And that issue should have been judicially inquired into and determined by the circuit judge, as we have seen, before any other issues were framed or other steps taken. And in this connection we may state that Kalanianaole was not an improper person to act as next friend of the Queen on the ground of having a supposed adverse interest.

The appointment of Mr. Andrews as guardian *ad litem* was not authorized as the facts upon which the authority of the court to make such an appointment depended were in controversy and remained undetermined. The answer and cross bill filed by the guardian *ad litem* should have been stricken from the record. The Queen was dismissed as a complainant and made a party respondent at the time that the amendment to the bill purporting to aver mental incompetency in the Queen was allowed. And assuming

that that averment could be held to be one of fact, and not a mere conclusion of law, it is to be regarded as the averment only of Kalanianaole who is not a proper party to the suit.

The circuit judge may entertain an application by some one asking leave to act as next friend of the Queen for the purpose of having her reinstated as the complainant in the case under the original bill, and, in that event, the question as to her present status and right to control the suit, or whether a next friend should be appointed for her, should be heard preliminarily.

The ruling and order appealed from is reversed, and the cause remanded to the circuit judge for further proceedings not inconsistent with the views expressed in this opinion.

*D. L. Withington* (*Castle & Withington, Thompson, Milverton & Cathcart* and *J. Lightfoot* with him on the brief) for complainant.

*Antonio Perry* for Liliuokalani.

*L. Banigan* (*Smith, Warren & Sutton* on the brief) for Wm. O. Smith, et al, trustees.