GROGAN et al. v. CITY OF BROWNWOOD.
(No. 6033.)

(Court of Civil Appeals of Texas. Austin, May 29, 1919. Rehearing Denied July 5, 1919.)

1. WATERS AND WATER COURSES ⬤➡216—IRRIGATION STATUTE—EXEMPTION OF EXISTING RIGHTS.

Irrigation Act, §§ 98, 98a (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5011m, 5011n), expressly exempt from the operation of the act existing or vested rights and the rights of riparian landowners.

2. WATERS AND WATER COURSES ⬤➡190—WATER SUPPLY—CITY AS RIPARIAN PROPRIETOR—CONVEYANCE.

Under the rule that when a thing is granted everything essential to its beneficial use passes, a city in its corporate capacity held a riparian proprietor, and entitled ·to riparian rights in a stream which it had dammed for a municipal water supply, such rights, if not existing otherwise, having been conveyed to, and having vested in, the city by conveyance from persons under whom parties in possession adversely to the city claimed through subsequent conveyances.

3. WATERS AND WATER COURSES ⬤➡156(3) — CONVEYANCE OF RIPARIAN LANDS—RESERVOIR—RESERVATION.

Deed from riparian proprietors to city of land whereon to erect a dam for reservoir purposes held not to have reserved to the grantors and their assigns the right to use the waters in the stream or bayou for irrigation purposes, which use might deprive the city of power to supply its inhabitants with water for domestic uses.

4. DEEDS ⬤➡97 — RESERVATION OR RESTRICTION.

When a particular thing has been granted by apt terms of conveyance a reservation or restriction which might result in destroying the subject-matter of the conveyance will be declared void and ineffectual.

5. WATERS AND WATER COURSES ⬤➡43 — RIPARIAN OWNERS—DOMESTIC USES AND IRRIGATION.

The general rule is that the right of a riparian owner to the use of the waters of a navigable stream for domestic purposes is superior to the right of a similar owner to use them for irrigation.

6. DEEDS ⬤➡90 — CONSTRUCTION FAVORABLE TO GRANTEE.

Any doubt in the construction of a deed or other conveyance should be resolved in favor of the grantee.

7. WATERS AND WATER COURSES ⬤➡156(7) — CONVEYANCE — PRIORITIES — DOMESTIC AND IRRIGATION USE.

A city to which riparian owners conveyed land with the right to erect a dam for reservoir purposes, the conveyance reserving to the grantors and their assigns the right to use water in the stream as they might deem fit, held entitled to priority in its use for its inhabitants of water for domestic purposes, though not to sell to railroads, when the stream was so low on account of drouth that there was sufficient water for such use alone, as against ·subsequent grantees of the riparian owners claiming the right to use water for irrigation, and therefore entitled to injunctive relief.

8. WORDS AND PHRASES—"REASON"—"REASONABLE"—"REASONABLY."

The words "reason," "reasonable," and "reasonably" have many shades of meaning, and sometimes the question of right and wrong, justice and fairness, may be considered in determining whether a particular thing is "reasonable."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reason; Reasonable; Reasonably.]

9. WATERS AND WATER COURSES ⬤➡197—WATER SUPPLY—INTERFERENCE—INJUNCTION.

Where a city was entitled to priority in the use of waters of a stream, which it had dammed, for the domestic uses of its inhabitants, as against other riparian proprietors who were using the waters for irrigation, at the city's suit the court should have issued a restraining order preventing the irrigators from using the water for that purpose until further order, and should not have perpetually restrained them from using the waters for irrigation in so far as the use would interfere, or threaten to interfere, with satisfaction of the city's domestic needs.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Suit for injunction by the City of Brownwood against P. W. Grogan and others. From judgment for plaintiff, defendants appeal. Reformed and affirmed.

Goodwin & Leach, of Brownwood, for appellants.

Wilkinson & McGaugh, of Brownwood, for appellee.

KEY, C. J. We copy from appellee's brief the following statement of the nature and result of this case:

"The combined allegations of appellee's original petition and trial amendment are as follows:

"That plaintiff is a municipal corporation having its location and site in Brown county, Tex.; that it has a population of about 12,000 inhabitants, and that A. O. Bratton is its mayor and W. E. Dickerson its manager.

"That plaintiff corporation is all built and situated upon the John S. Thom, William Irion, Marcus Huling, and D. J. Jones surveys of

land, which surveys on their northeast sides abut directly upon a natural water course and flowing stream, having a well-defined channel, with banks and bed, known as "Pecan bayou," and all of which surveys are within the watershed of said stream; that plaintiff is now, and for many years has been, the owner in fee simple, and in the actual use and possession of a continuous strip, tract, and parcel of land, about two and one-half miles in length on each side of said stream, and abutting thereon throughout their entire length, the strip, tract, and parcel on the south side of said stream being a part of said John S. Thom, William Irion, and Marcus Huling surveys; that plaintiff is also now, and for many years has been, the owner in fee simple, and in the actual use and possession of a tract and parcel of land immediately adjoining said strip abutting on said stream on the south, and extending from said strip into the corporate limits of the city of Brownwood, and connecting directly and at many points with the streets and alleys of said city; that plaintiff is also now, and for many years has been, the owner in fee simple, and in the actual use and possession, of a tract and parcel of land of about one acre, fronting about 300 feet on said Pecan bayou on its southwest side, and situated about 450 feet up said stream from the strip of land owned by it on that side of said bayou as aforesaid, said tract which is riparian to said stream as already stated, having been used for many years by plaintiff as a site for the power station by which plaintiff pumped water into the city of Brownwood.

"That many years since this plaintiff, for the purpose of supplying its inhabitants with water, erected a dam across Pecan bayou near the northwest extremity of said two strips or parcels of land first mentioned abutting on said stream, and owned by plaintiff as aforesaid, thereby creating a large reservoir, and impounding a great quantity of water for the use of said city; that the ends of said dam were built and constructed on the said strips of land which plaintiff owns along said stream, as aforesaid, and several feet from the extremity of said two strips, and that said dam extended from the banks of said stream, which banks were owned at said points by plaintiff, and directly across said stream between said strips of land owned by plaintiff; that the southwestern end of said dam was down said stream about 500 or 550 feet from the said tract or parcel of land of about one acre owned by plaintiff, upon which its power station was formerly located; that some time after the building and erection of said dam this plaintiff, for the purpose of increasing the supply of water needed for the use of said city by reason of its increasing size and demands, and on account of the partial filling of said reservoir with dirt and other substances, erected another dam near the southeastern extremity of said two strips or parcels of land, thereby creating a second reservoir, and impounding the water contained between said dams.

"That on September 13, 1911, plaintiff disconnected its pipe line with the reservoir made by said first dam, and discontinued pumping directly therefrom, and removed its power station from said one-acre lot; and at that time it made and entered into a contract with the defendant S. M. Parks, and with J. S. Coggin, I.

J. Bailey, and J. A. Coggin, relative to the use by plaintiff of the water contained in said first-mentioned reservoir; that a true copy of said contract is hereto attached, referred to, and made a part hereof; that said contract is a covenant running with the land of said Sam Parks, J. S. Coggin, and J. A. Coggin, through whom the defendants P. W. Grogan and J. W. Arant deraign title to the lands claimed by them and described in their answers herein.

"That the water contained in said reservoirs is conducted into the city of Brownwood, and into its elevated reservoir located near the city, by means of a pipe line constructed underground, beginning a few yards above said dam erected near the southeast extremity of the two strips of land above mentioned, which pipe line passing over said strip on the south side of said stream, and over said other tract of land adjacent thereto owned by the city, as aforesaid, connects said reservoir directly with said elevated reservoir and with the system of water pipes and sewers distributed throughout said city; that the water is forced into said pipe line and elevated reservoir by means of a power station and pumps situated upon the city's said property near the dam last mentioned.

"That the city of Brownwood has no pipe line connection directly with the reservoir first mentioned; that is to say, with the upper reservoir, and one farthest removed from said city; and has no means of conducting the water therefrom into said city, and using same, except by first causing it to flow into the reservoir situated between said dams; that such flow is accomplished by opening a water gate built in said upper dam, which gate is located at or near the bottom of said dam, and about on a level with the natural bed of the stream, and by digging a ditch or trench through the silt, dirt, sand, and other drift and substances accumulated against said gate and dam, and from said gate and dam to the body of the water impounded in said reservoir and confined above said dam; that by this means the confined water is released and permitted to flow by gravity through said ditch or trench and gate, and upon the natural bed of said stream, into the reservoir situated between said dams; that by the expression "natural bed of said stream," is meant the bed upon which the water would immediately rest and flow if no dam had been erected at said place, and upon which it did rest and flow before the erection of said dam; but upon which said silt, dirt, sand, and other drift and substances accumulated on account of the obstruction presented by said dam.

"That on account of the protracted drouth prevailing in this section of the state the waters of Pecan bayou ceased to flow several weeks ago; and that by reason thereof, and the great amount of water necessary to supply the household needs and other domestic and natural uses of the inhabitants of the city of Brownwood, and used by them for such purposes out of the reservoir situated between said dams, the water contained in said reservoir is rapidly nearing exhaustion, and that unless replenished said water will be entirely exhausted in a few days.

"That the defendants, P. W. Grogan, J. W. Arant, and Sam Parks, who are the owners, or in the possession of, and using, and claiming

certain tracts of land abutting on Pecan bayou, and situated on both sides of said stream, and immediately above the lands owned by plaintiff, and above its said upper dam, are claiming the right to the exclusive use of all the water contained in the reservoir made by said dam; and are, for irrigation and other purposes, rapidly exhausting and appropriating to their own use all the water contained in said reservoir, and are forbidding, and by force preventing, this plaintiff from conducting same, or any further part thereof, into the reservoir situated between said dams, and from further using said water, as it has the right to do; that said defendants, and each of them, have large tracts of land under cultivation in the vicinity of said reservoir, which lands are equipped with powerful pumping plants, and that said plants are daily pumping great volumes of water from said reservoir, and upon said lands, for the irrigation of same, and the crops growing thereon, and are fast exhausting the water contained in said reservoir; that this plaintiff several days since, for the purpose of conducting a portion of the water contained in said upper reservoir into the reservoir situated between said dams, and for the purpose of preventing the utter exhaustion of the water contained in said lower reservoir, and a consequent water famine in said city, caused the gate in said upper dam to be opened, and also repeatedly caused a ditch or trench to be dug and extended from said gate to the body of water contained in said upper reservoir, said ditch or trench at no place being dug lower than the natural bed of said stream; that said defendants have repeatedly filled up said ditch or trench soon after same was dug and opened, as aforesaid, and have prevented, and are now, by having filled said ditch or trench, preventing, the flow of said water into said lower reservoir, and are forbidding this plaintiff, and its agents and employés, from again opening said ditch or trench, and are now, by intimidation and force, preventing them from again doing so.

" 'That on July 2, 1917, the city of Brownwood, by ordinance duly enacted, forbade the use in said city of any of said water, except for necessary and domestic purposes; and that until there is rain, and the filling and flowing of said stream, the use of said water will be restricted to such purposes.

" 'That unless said defendants, and each of them, are forbidden and restrained, by an order of this court, from the use for irrigation purposes of the water contained in said upper reservoir, and that flowing therein, and from the closing of said ditch or trench permitting the flow of said water from said upper to said lower reservoir, the city of Brownwood, and its inhabitants, will, in a few days, be deprived of the use of its waterworks system, and will be without a supply of water for protection against fire, and for the domestic and ordinary uses of the homes and business establishments of said city.

" 'Premises considered, plaintiff prays for an order of this court granting it a writ of injunction, restraining and enjoining said defendants, and their agents, servants, and employés, and each of them, from using the water impounded or confined by plaintiff's said upper dam, or any part of said water, or any water flowing into the reservoir made or created by said dam, for the purpose of irrigating any lands or crops, and also restraining and enjoining said defendants, and each of them, and their agents, servants, and employés, from filling, in whole or in part, or otherwise interfering with the ditch or trench dug and extended by plaintiff from the gate in said upper dam to the body of water contained in the reservoir created by said dam, and also restraining and enjoining them, and each of them, their agents, servants, and employés, from in any way interfering with the flow of said water through said ditch or trench and gate from said upper into said lower reservoir; and that upon final hearing hereof plaintiff have judgment making said injunction perpetual; and for such other and further relief, special and general, in law and in equity, that it may be entitled to.'

"The defendant J. W. Arant, besides the general issue, pleaded that his vendors had appropriated the waters of Pecan bayou under the provisions of the Revised Statutes; and that he also had the right to use the waters of said stream by virtue of a contract between said vendors and the city of Brownwood.

"The defendant Sam Parks, whose answer was adopted by the defendant P. W. Grogan, besides relying upon the general issue and the contract last mentioned, pleaded that he had appropriated the waters of Pecan bayou under the provisions of the Revised Statutes, and also had by prescription acquired the right to use said waters for irrigating his lands.

"Upon a trial, without a jury, the court made the following decree, viz.:

" 'Now, on this, the 21st day of January, A. D. 1918, the above styled and numbered cause coming on to be heard, came the plaintiff, city of Brownwood, by its attorneys, and the defendants, P. W. Grogan, J. W. Arant, and Sam Parks, in person, and by their attorneys, and announced ready for trial; and, no jury being demanded, the matters of fact as well as of law, were submitted to the court; and the court having heard the pleadings, evidence, and argument of counsel, and duly considered same, is of the opinion that the law is for the plaintiff, and that it is entitled to the relief prayed for in its petition to the extent hereinafter indicated.

" 'It is therefore considered, ordered, adjudged, and decreed by the court that said defendants, P. W. Grogan, J. W. Arant, and Sam Parks, their agents, servants, and employés, be, and they and each of them hereby are, perpetually forbidden, restrained, and enjoined from using the water of Pecan bayou upon their lands riparian to said stream, and described in their several answers filed in this cause, for the purpose of irrigating any of said lands, and for the purpose of watering any crops or products planted, or to be planted, or grown on said lands, in so far as such use of said water would interfere, or threaten to interfere, with the getting by plaintiff from said Pecan bayou, and from above its present dams, of water in sufficient quantities to supply the domestic needs and general municipal purposes of the city of Brownwood; and also that said defendants, P. W. Grogan, J. W. Arant, and Sam Parks, their agents, servants, and employés be, and they and each of them hereby are, perpetually forbidden, restrained, and enjoined from in any way preventing or hindering plaintiff from drawing off and using from the pool or reservoir immediately above its old or upper dam, and through

the gate and opening in said dam, water in sufficient quantities to supply the domestic needs and general municipal purposes of the city of Brownwood.

"'It is further ordered, adjudged, and decreed that plaintiff have and recover of and from said defendants, and of and from each of them, all costs in this behalf incurred or expended, for which costs let execution issue.'"

The plaintiff proved all of the material facts alleged in its pleadings, including the following contract:

"State of Texas, County of Brown.

"Whereas, Sam Parks is the owner of a part of the John S. Thom survey, lying on the west side of Pecan bayou, above the old dam across said bayou first erected by the city of Brownwood, and near the old pump station of the said city of Brownwood, said land having been acquired from Mrs. L. R. Westmoreland and C. H. Jenkins, and said lands in part fronting on the waters above said dam and impounded and held in place by said dam; and, whereas, I. J. Bailey, and J. A. Coggin, and J. S. Coggin are the owners of the land above said dam on the east side of said bayou, and fronting on said waters so impounded and held in place by said dam, said lands being out of the ———— survey, all near Brownwood, in Brown county, Tex.; and, whereas, the said Parks, Bailey, and Coggin are now using the waters so.impounded for irrigation and other purposes; and, whereas, the city of Brownwood has the right heretofore acquired to use said water for general municipal purposes; and, whereas, said city of Brownwood is desirous of dismantling the pumping station erected to use said waters, and also is preparing to remove the water main connecting said waters and said pumping station erected to use said waters, and also is preparing to remove the water main connecting said waters and said pumping station with the city of Brownwood: This contract, therefore, witnesseth as follows: That the said Parks and the said Coggin and Bailey agree that in event the city shall remove its said pumping station and remove the said pipe, or do either or both of said acts, that the city shall not thereby forfeit its water privileges now held by it in said waters, nor forfeit any of its rights or privileges in said dam, but that said city may hereafter at any time it may so desire, use said waters as it has hitherto used the same, and the said city on its part does hereby recognize the right of said Parks and the right of the said Coggin and Bailey to make such reasonable use of said waters for the aforesaid purposes as they are now and during the past years have been doing; it being understood that the purpose of this agreement is to preserve to each of said parties and to said city such rights as they now have, and that none of said rights shall be waived or abridged by the said contemplated action upon the part of the said city of Brownwood. The said Parks further agrees that said city may, at any time it may see fit in the future, re-lay said water main at the same place where it now exists on any lands now held by him which are crossed by said main; the expense of the taking up and re-laying of said main, however, is to be borne wholly by said city, without loss or damage to the said Parks.

"Witness our hands at Brownwood, Tex., this 13th day of September, A. D. 1911. City of Brownwood, by J. R. Looney, Mayor. Sam Parks. J. S. Coggin. I. J. Bailey. J. A. Coggin."

The defendants introduced testimony tending to show that they had taken the necessary steps, as prescribed by statute, for the purpose of appropriating the water of Pecan bayou for irrigation purposes. They also introduced in evidence the following written contract:

"The State of Texas, County of Brown.

"Know all men by these presents: That we, J. F. Smith, Annie E. Jenkins, joined by her husband, C. H. Jenkins, and W. H. Scott, all of said state and county, for and in consideration of the sum of ($900) nine hundred dollars in negotiable city water script, issued in sums of five dollars or more, as these grantors may desire, have bargained, aliened and conveyed, and do by these presents grant, bargain, sell and convey unto the city of Brownwood, in Brown county, Tex., one (1) acre of land out of the John S. Thom survey in Brown county, Tex., described as follows, to wit: Beginning at a stake at the low-water mark on west side of the Pecan bayou fr-wh a large L. O. about 15 feet below the waterworks pump house mkd. X brs. west 45 feet; thence up said bayou with its meanders to a stake 208 feet at low water mark; thence in westerly direction at right angles with said bayou 200 feet a stake; thence in a southerly direction with said bayou 208 feet stake; thence in easterly direction parallel with said upper line 208 feet to beginning, the same being the ground upon which the pump house and apparatus of the city waterworks now stands. Also the right and privilege to construct and maintain a dam across said bayou at a convenient place below said pump house, to maintain a crossing at or below said dam and to have the right of passage along said bayou bank to and from said pump house and dam for purposes of repairing, maintaining and constructing said dam; it being expressly understood that this conveyance in no wise affects or limits the use or right to use the water in said bayou by the grantors herein, their heirs or assigns in any way they may deem fit along the bayou front of said Thom survey, and that the said grantors do not hereby waive any claim for damages they may suffer as owners of said Thom survey by reason of the constructing or maintaining of said dam. To have and to hold all and singular the said premises and rights to the said city of Brownwood forever, and we hereby bind ourselves, our heirs and representatives to warrant and forever defend the right and title to the same against all persons whomsoever. And the aforesaid grantors herein in consideration of the covenants and agreements hereinafter set forth do hereby release and grant the use, possession and control to said city of Brownwood for the purposes of a public highway for so long a period of time as said city may desire to keep up and does keep up and use the same the following strip of land, off of the said Thom survey (60) sixty feet wide: Beginning at the N. E. end of (1st) First street in Fairland Heights, an addition to said city, and run-

ning thence N. 45 E. with the south boundary line of said Thom survey to where the present waterworks main intersects said Thom line and thence with said main to the aforesaid pumping station or house, so as to leave 20 feet of said highway on the east side of said main and 40 feet on west side, in consideration of which grant the said city hereby agrees to fence each side of said highway with a four-wire fence with good and substantial posts, using the fencing of the grantors now along said line so far as the same will go; to grade and side-ditch said highway and to maintain the same with said fencing in good condition as an avenue or public highway and to erect and maintain at the place where said highway crosses the slough a brush, rock and earth dam, water tight, in height on or near a level with the banks of said slough and not less than (20) twenty feet wide on the top thereof, and in suitable condition for public travel in vehicles or wagons across said dam, it being understood, however, that when said dam has been constructed in accordance with the above stipulations, if it should become impracticable to continue to maintain the same, then said city shall have the privilege to erect and maintain in lieu of said dam a good substantial bridge at the same place across said slough and to maintain the same in good repair. And it is expressly understood and agreed that the opening of said highway and the building of said dam across said slough shall be commenced and finished within (12) twelve months from this date and that such is a condition precedent to the taking effect of the grant herein made by these grantors.

"Witness our hands this 30th day of January, A. D. 1894. J. F. Smith. Annie E. Jenkins. W. H. Scott. C. H. Jenkins."

That instrument was duly acknowledged March 3, 1894.

It was agreed that on and prior to the 30th day of January, A. D. 1894, W. H. Scott, J. F. Smith, and Annie E. Jenkins were the owners of the Jno. S. Thom survey, having acquired the same by means of a conveyance from the patentee; that the Jno. S. Thom survey is situated on the southwest bank of Pecan bayou, having for its northeast boundary said bayou, and it is riparian land. It was shown that the city of Brownwood had been selling to the Gulf, Colorado & Santa Fé Railway Company 200 gallons of water daily, for which it received $550 to $600 per month; to the Frisco Railroad 120 gallons a day, for which it received 20 cents per thousand gallons up to 40,000 gallons, and 15 cents per thousand for the remainder. That it sold to the ice plant 120 gallons per day, and to the Texas Power & Light Company and Walker-Smith Company about 10,000 gallons each per day; and that it sold water to livery stables and garages and eight families outside of the city limits, as well as to the citizens residing within the corporate limits. That for the year 1917 the city received from the sale of water $31,000, and that the expense of operating the waterworks was $16,000.

Incidentally, though not material to any question involved in the case, it is not improper to say that Brownwood has a commission form of government, and employs a general manager. Some other facts may be referred to hereafter, but the foregoing is believed to constitute a summary of the controlling facts in the case.

## Opinion.

Elaborate discussion of all the questions presented in appellants' brief would extend this opinion beyond proper limits; and, therefore, and without referring specifically to assignments of error, we will now proceed to discuss and announce our conclusions upon the questions deemed by us to be of most importance:

[1] 1. Concerning appellants' alleged right to appropriate the 'waters of Pecan bayou under our irrigation statute approved April 9, 1913 (Acts 33d Leg. c. 171 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5011m, 5011n]) it is sufficient to say that sections 98 and 98a thereof expressly exempt from its operation existing or vested rights and the rights of riparian landowners. The city of Brownwood is asserting both contract and riparian rights acquired by it before the passage of the act referred to; and, therefore, by the very terms of the act such rights are not impaired.

[2] 2. Under the facts disclosed by the record in this case, we hold that the city of Brownwood in its corporate capacity is a riparian proprietor, and entitled to riparian rights in the stream known as Pecan bayou. If such riparian rights do not exist otherwise, they were conveyed to and vested in the city by the conveyance from W. H. Scott, J. F. Smith, C. H. and Annie E. Jenkins, under whom appellants claim through subsequent conveyances.

It is true that the deed referred to does not in express terms convey any right to the water in the stream, or other riparian right, but the facts disclosed by the record as existing at the time of the execution of that instrument brings it within the rule of construction sometimes expressed in these words:

"Inasmuch as when a thing is granted everything essential to its beneficial use and enjoyment is, in the absence of language indicating a different intention on the part of the grantor, to be considered as passing by the conveyance."

In Whitney v. Olney, 3 Mason, 280, Fed. Cas. No. 17595, Judge Story expressed the rule in these words:

"The good sense of the doctrine on this subject is, that under the grant of a thing, whatever is parcel of it, or of the essence of it, or necessary to its beneficial use and enjoyment, or in common intendment is included in it, passes to the grantee."

In Wall v. Cloud, 3 Humph. 181, the Supreme Court of Tennessee said:

"It is a principle of law well settled, that everything necessary to the full enjoyment of a right passes with a purchase of the right; for example if one sells a part of his land in the center of his tract, a right of way through passes with the purchase; if one sells a crop upon his ground, a right of entry to gather the same is purchased with the crop. So, if a place for an abutment of a dam is sold, the right to use the water collected by the dam passes with the land, for otherwise the very object for which it was purchased is defeated. * * * When a right is granted by a riparian owner to abut a milldam on his shore, the grantee has prima facie a right to all the water power created by the erection; and the burden of proof is upon the grantor to show that the grant was made with limitation, or restrictions respecting the use of the water. * * * It is obvious then that the defendant Cloud, by his deed of the 15th October, 1836, conveyed to the complainants not only the ground upon which the southern abutment of the dam stood, but also the right to the entire and exclusive use of all the water power created by the erection of the dam, it being necessary to the enjoyment of the property purchased, and appurtenant thereto."

In the case at bar, the right to build and maintain a dam is granted to the city, and as the sole purpose of the construction of the dam was to provide a means of securing sufficient water supply for the city of Brownwood, and as no restriction whatever is imposed on this right by the terms of the conveyance, and as the use of the water is essential to the beneficial use and enjoyment of the dam, we hold that the conveyance referred to granted to the city such right to the use of the water as puts it upon the same plane as a riparian owner.

[3, 4] 3. However, it is contended on behalf of appellants that the stipulation in the conveyance referred to, "it being expressly understood that this conveyance in nowise affects or limits the use or right to use the water in said bayou by the grantors herein, their heirs or assigns, in any way they may deem fit along the bayou front of said Thom survey," secures to appellants, who hold under the grantors in that instrument, the right to use the waters of the stream fronting on the Thom survey for the purposes of irrigation, although such use may result in depriving the inhabitants of the city of Brownwood of water for domestic purposes.

In connection with that instrument, and in order to determine the rights of the parties thereunder, it becomes necessary to consider and determine the effect of the subsequent agreement entered into between the city of Brownwood and Sam Parks, J. S. Coggin, I. J. Bailey, and J. A. Coggin, under whom appellants claim. In the latter instrument it is in substance agreed that the city of Brownwood at the time that instru-

ment was executed, which was many years after the execution of the first instrument had the right theretofore acquired to use the waters of the bayou for general municipal purposes, and that Parks, Bailey, and the two Coggins, who were then and for years past had been using such waters for irrigation and other purposes, were to have the right to make such reasonable use of such waters for such purposes as they had theretofore being doing. Therefore, and notwithstanding the broad and comprehensive terms embraced in the reservation in the deed from Scott and others to the city, we are of the opinion that that instrument should not be construed as reserving to the grantors therein and their assigns the right to use all the waters in Pecan bayou for irrigation purposes, although such use might deprive the city of the power to supply its inhabitants with water for domestic uses. To so construe that instrument might render it nugatory. It is a sound rule of construction that when a particular thing has been granted by apt terms of conveyance a reservation or restriction which might result in destroying the subject-matter of the conveyance will be declared void and ineffectual. In other words, a restriction or limitation will not be permitted to stand if its effect is to remove the subject-matter from the granting clause of the conveyance. In this case the written agreement which was entered into between the city of Brownwood and the then owners of the Thom survey, 16 years after the former instrument was executed, shows that the parties at interest did not construe the former conveyance as reserving to the grantors and those holding under them water rights superior to those acquired and held by the city of Brownwood.

[5-8] 4. This brings us then to what is, perhaps, the most difficult question involved in this litigation, and that is the relative rights of the litigants under the instruments heretofore referred to.

As a general proposition, the rule is well settled that the right of a riparian owner to the use of the waters of a navigable stream for domestic purposes is superior to the right of a similar owner to use such waters for the purposes of irrigation. Should that rule be applied to this case? That question is not free from difficulty, but, after careful consideration, we have reached the conclusion that it should, and will proceed to state some of the reasons upon which that conclusion is based.

And this brings us again to the consideration of the stipulation referred to in the conveyance from W. H. Scott and others to the city of Brownwood, and, as said before, if that stipulation reserved to, or vested in, the grantors the absolute right to the use of all the waters in the stream for irrigation purposes, then, as the result would be to render nugatory and of no effect the grant-

ing clause, which, as heretofore stated, was intended to vest in the city of Brownwood not only the right to construct and maintain the dam but also the right to use the waters of the stream for the purpose of supplying water to the inhabitants of that municipality, it should be declared void rather than to permit such a result. But it is not clear to us that it was intended by the grantors that the stipulation referred to should have any such far-reaching effect. On the contrary, a careful reading of it, when considered in connection with the conditions and circumstances under which the instrument was executed, affords at least some ground for the contention that it was supposed at that time that the stream would always furnish sufficient water to supply the necessary and proper wants of the city and of the grantors; and that it was not intended to reserve to or vest in the grantors and their assigns any right superior to those vested by law in riparian owners.

We concede that a plausible argument may be made in support of the proposition that the stipulation referred to secured to the grantors and their assigns the right to use the waters of the stream for irrigation purposes equal to the right which was vested in the city to furnish such waters to its inhabitants for domestic uses. On the contrary, considering the circumstances under which the instrument was executed, and the object which the city of Brownwood had in view, which object was known to the grantors, we do not think the construction referred to is free from all doubt, and we hold that such doubt should be resolved in favor of the grantee. This is a general rule of construction applicable to deeds and similar instruments, and for humanitarian reasons is peculiarly applicable to this case, which, in a sense, is a conflict between the rights of several thousand persons to have a supply of water for domestic purposes and a few persons to have the use of the same water for agricultural or business purposes.

In the subsequent written agreement heretofore referred to the parties at interest seem almost to have placed the same construction upon the deed under consideration. It is therein stated that "city of Brownwood has the right heretofore acquired to use said water for general municipal purposes," and that the then owners of abutting lands now held by the appellants in this case have the right "to make such reasonable use of said waters for the aforesaid purposes as they are now and during the past years have been doing." At that time, and prior thereto they had been using the waters of the bayou for irrigation purposes, but it will be noted that it is stated in the agreement that the right of such parties was to have the "reasonable use" of the waters for that purpose, and we think that construction should be adopted and applied in determining the rights of the parties involved in this suit. The use of the word "reasonable" in describing the rights of the riparian landowners, indicates that the appellants' grantors did not construe the former instrument as reserving to them the absolute right to the use of all the waters in the stream, nor necessarily the right to use them for agricultural purposes, equal to the right of the city to furnish its inhabitants with water for domestic purposes.

The words "reason," "reasonable," and "reasonably" have many shades of meaning, and sometimes the question of right and wrong, justice and fairness, may be considered in determining whether a particular thing is reasonable; and we think this case belongs in that class. Therefore we hold that it would be unreasonable, because of its injustice, to permit appellants to use the waters in question for irrigation purposes to such an extent as to deprive the city of Brownwood of its ability to supply its inhabitants with water for domestic purposes; and the city has the right to injunctive relief to prevent such result.

5. We agree with counsel for appellants in the contention that the city of Brownwood, in selling water to railroads and others who did not use the water for domestic purposes, and in selling water to persons outside of the city limits, was not using the water thus disposed of for any municipal purpose, and that while so doing it was not entitled to restrain appellants from the use of water for irrigation purposes. While the record shows that such course had been pursued by the city to a considerable extent, it does not specifically show that it was being done at the time the case was tried and judgment entered; and, therefore, we have concluded not to reverse the case upon that account.

[9] However, we hold that fundamental error was committed in rendering judgment perpetually restraining appellants from using the waters in question for the purpose of irrigating their lands, "in so far as such use of said water would interfere or threaten to interfere with the getting by plaintiff from said Pecan bayou, and from above its present dams, water in sufficient quantities to supply the domestic needs and general municipal purposes of the city of Brownwood." It seems to us that a decree so indefinite in its terms does not sufficiently fix and dispose of the rights of the parties. How are appellants to know, and who is to determine, when the use by them of water for irrigation purposes would threaten to interfere with the city in getting sufficient quantities of water, etc. In cases of this character, where conditions are likely to change, it seems to us that the proper remedy would be to issue a restraining order preventing the defendant from using the water involved for purposes of irrigation, until further ordered by the court, or by the judge acting

in chambers; and the judgment appealed from will be reformed in that respect, and the case will be retained upon the docket of the trial court in order that appellants may have the right, by making a sufficient showing, to have the injunction abated or suspended. If, upon such application, it is made to appear that no necessity exists for such restraining order, or that the city of Brownwood is still selling part of the water taken from the stream for commercial purposes, or to persons outside of the limits of the city, then such order should be made by the court or the judge as will relieve appellants from compliance with the decree and restraining order.

6. Some other questions are presented in appellants' brief which we deem it unnecessary to discuss in this opinion. They have been duly considered, and are decided against appellants.

For the reasons already stated, the judgment of the trial court is reformed and affirmed.

Reformed and affirmed.

JENKINS, J., being disqualified, did not sit in this case.

⊖⊸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes