## J. M. LINDLY v. HARLIN LINDLY ET AL.

No. 1872. Decided December 2, 1908.

**1.—Next Friend—Mental Infirmity.**

The practice in courts of equity permits the representation by next friend of persons who, though not *non compos mentis*, are, by reason of mental or bodily infirmity, incapable of properly caring for their own interests in the

litigation, without express appointment of such representative as guardian *ad litem*. Question is suggested as to whether such guardian could be appointed under the statute (Rev Stats., art. 1211) in case of mere infirmity. (P. 141.)

### 2.—Same—Practice.

Where the party is in court, in person or by attorney, making an issue as to the existence of his alleged disability and the right of the next friend to appear for him, it seems that the court may inquire into and determine that question. Its ruling thereon permitting issues in the case to be litigated by the next friend will be sustained unless error is shown; and none appears where it is not shown what evidence, or whether any evidence, was introduced on such hearing. (Pp. 141–143.)

### 3.—Next Friend—Adverse Interest.

It would be improper to permit a party suffering under infirmity of mind to be represented by one as next friend whose interest in the litigation was adverse. But no error appears from the fact that next friend was a party nominally having adverse interests, where the evidence disclosed that he had in fact no interest in the result of the suit. (P. 143.)

### 4.—Written Instrument—Parol Evidence—Understanding of Parties.

The effect of the acceptance by the wife of a deed from the husband to herself and others purporting to convey the entire estate in lands, can not be qualified by proof that she understood it to pass only his half interest in the community property, in the absence of other allegation and proof of mistake or fraud upon his rights. (P. 144.)

### 5.—Husband and Wife—Deed to Wife.

The husband may convey community property to the wife for life, with the remainder in fee to others. (P. 144.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Hunt County.

J. M. Lindly obtained writ of error on the affirmance, on his appeal, of an adverse judgment in a suit brought by him against Harlin Lindly and others.

*H. C. Connor, Bennett & Jones* and *Thompson & Manning,* for plaintiff in error.—One defendant has no right and there is no law to warrant or authorize him to act for and file an answer as next friend for a codefendant alleged by him to be of unsound mind, for if such codefendant is in fact of unsound mind (and this the court should determine when the matter is brought to his attention) it is the duty of the court under the statute to appoint a guardian ad litem for the non compos mentis, and a motion by the adverse party to strike out such answer should be sustained. Rev. Stats., art. 1211.

A deed from the husband to the wife purporting to convey by deed of gift to her lands belonging to the community estate for her life with remainder to others, although accepted by her, is not binding on her, and she is not estopped after she becomes feme sole to assert her rights thereto. Proetzel v. Schroeder, 83 Texas, 684; Holland v. Couts, 100 Texas, 232; Spear on Married Women, secs. 49, 278; Bishop on Married Women, secs. 724, 725.

A deed from the husband to the wife expressing a consideration "of love and affection for her" conveying community property, simply

describing it as "certain parcels or tracts of land," to her for life with remainder to others with no recitation or statement in the deed that the grantor intended by the conveyance to include also the wife's interest, will not be construed as affecting the same, but will be construed as a conveyance of his interest only. Story on Eq. Jur. (13th ed.), sec. 1089; Pomeroy on Eq. Jur. (3d ed.), secs. 472, 473, 488, 489, 492, 498, 503, 505; Rogers v. Trevathan, 67 Texas, 409; Carroll v. Carroll, 20 Texas, 744; Smith v. Butler, 85 Texas, 126; Holland v. Couts, 100 Texas, 232.

The court erred in excluding the evidence of Sally Lindly to the effect that she did not understand that the deed made to her by her husband and referred to in the above assignment in any way affected her community interest in the land. Pomeroy's Eq. (3d ed.), secs. 512, 515; 2 Story on Eq. Jur., sec. 1097; King v. Lagrange, 50 Cal., 328; 61 Cal., 221.

The disability of a married woman to elect or be estopped in such a way as to operate as a transfer of her real estate, if it exists at all in this State, exists solely by reason of the statute requiring her husband to join in a conveyance thereof and that the same be privily acknowledged by her. In matters not controlled by the statute she is bound by the rules of equitable estoppel or equitable election the same as a man. City of San Antonio v. Grandjean, 91 Texas, 430; Ballard v. Carmicheal, 83 Texas, 355; Lecomte v. Toudouze, 82 Texas, 214; Rogers v. Roberts, 13 Texas Civ. App., 190; Cravens v. White, 73 Texas, 577; Pryor v. Pendleton, 92 Texas, 384; Riley v. Wilson, 86 Texas, 240; Hall v. Dotson, 55 Texas, 524; Pitts v. Elsler, 87 Texas, 347; Nolan v. Moore, 96 Texas, 341; Tippett v. Brooks, 95 Texas, 355; Spear on Married Women, secs. 64, 65, 131, 118, 99, 115, 116.

The land being community property, only the husband could convey it. The wife's joinder in such a conveyance, being unnecessary and useless, if any action on her part was required her consent alone was sufficient, and this was supplied by her acceptance of the deed. Rev. Stats., art. 2968; Prudom v. Boyd, 82 Texas, 130; Dooley v. Montgomery, 72 Texas, 429; Spear on Married Women, secs. 99, 115, 116, 174, 175, 207, and authorities cited in notes.

A deed from husband to wife covering community property, giving a life estate to the wife with remainder to certain of their children, to be equally divided between them, containing a clause of general warranty, conveys a fee simple title to the entire lands described in such language as will not admit of any other construction. Rev. Stats., arts. 2968, 628; Simonton v. White, 93 Texas, 50; Pool v. Foster, 49 S. W., 923; Edens v. Simpson, 17 S. W., 788; Bennett v. Virginia Ranch Land & Cattle Co., 21 S. W., 126; Lindsay v. Freeman, 83 Texas, 259.

*T. D. Starnes, Mulkey & Hamilton,* and *Looney & Clark,* for defendants in error.—It is immaterial that Asa Jernigan, who acted as next friend, was, as the husband of Mellie Jernigan, a formal party defendant in the case. His right to act in the capacity of next friend was recognized by the court. The rule is that "any person who is

permitted by the court to prosecute an action is to be deemed a suitable person." Gulf, C. & S. F. Ry. Co. v. Styron, 66 Texas, 425.

Community property can be conveyed by the husband only. The joinder of the wife in a conveyance thereof adds nothing at all to the conveyance. Rev. Stats., art. 2968; Bassett v. Martin, 83 Texas, 339; Hardin v. Sparks, 70 Texas, 429; Spear on Married Women, secs. 207, 174, 175.

In this State the right of a married woman to acquire and hold property, real and personal, either by gift, devise, descent or purchase, is as absolute as that of the husband. Pitts v. Elsler, 87 Texas, 347; Barnett v. Murray, 54 S. W., 784; Spear on Married Women, secs. 69, 82; Rogers v. Roberts, 13 Texas Civ. App., 190.

The property being community, Jahu Lindly, the husband, had the power to convey it directly to the children "to commence in futuro" and when they accepted the deed it became valid and binding on the community. It is immaterial whether Sallie Lindly, the life tenant, accepted or had the power to accept the deed. Rev. Stats., art. 632; Simonton v. White, 93 Texas, 50; Leslie v. McKinney, 38 S. W., 378; Martin v. Faries, 22 Civ. App., 539; Matthews v. Moses, 21 Texas Civ. App., 496; McLain v. Garrison, 39 Texas Civ. App., 431; Shirey v. Clark (Mo.), 81 S. W., 1057; Forwood v. Forwood (Ky.), 67 S. W., 842.

The legal effect of a deed can not be varied or limited by parol evidence. When Sallie Lindly accepted the deed she was bound by its terms and the law conclusively presumes she knew its legal effect. Heffron v. Cunningham, 76 Texas, 312; Johnson v. Morton, 67 S. W., 790; Aetna Insurance Co. v. Holcomb, 89 Texas, 404; Sanger v. Warren, 91 Texas, 472; Ryan v. Missouri, K. & T. Ry. Co., 65 Texas, 13; Weir v. McGee, 25 Texas (Sup.), 31.

The uncontradicted evidence shows that all the grantees of the remainder estate under the deed of Jahu Lindly accepted the deed immediately after it was delivered. It thereupon became valid and binding as a conveyance of the remainder estate, and the question of whether or not the grantee of the life estate accepted it, understandingly or otherwise, can have no possible bearing on their rights under the deed. The court should have instructed the jury, as a matter of law, to find for these grantees. Rev. Stats., arts. 2968, 632; Leslie v. McKinney, 38 S. W., 378; Martin v. Faries, 22 Texas Civ. App., 539; Matthews v. Moses, 21 Texas Civ. App., 496; McLain v. Garrison, 39 Texas Civ. App., 431; Shirey v. Clark (Mo.), 81 S. W., 1057; Forwood v. Forwood (Ky.), 67 S. W., 842.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This suit was brought by plaintiff in error for partition of several tracts of land of which he alleged he was the owner of one-half and the defendants of the other half. The defendants were his mother, Mrs. Sallie Lindly, and other children and descendants of herself and Jahu Lindly, her deceased husband. An answer was filed in the name of Mrs. Sallie Lindly on February 4, 1907, alleging that she had conveyed all her interest in the land to plaintiff, reserving only the rent for the year 1906; that she did not claim any part of

her deceased husband's interest therein; that her husband had died in 1906, leaving her in possession of all of the land, and that she had collected the rents for that year, for the balance of which, after deducting expenses, debts and taxes, she offered to account. She also asked that the lands be partitioned between plaintiff and her co-defendants and that she be relieved of further responsibility, claiming nothing for herself. This answer was signed by Mrs. Lindly in person. Among the defendants were Mrs. Mellie Jernigan, a daughter of Jahu and Sallie Lindly, and her husband, Asa Jernigan. On February 12, 1907, an answer was filed for Mrs. Sallie Lindly by Asa Jernigan, as her next friend, seeking, upon allegations which would be sufficient if properly set up by Mrs. Lindly or in her behalf, to authorize the cancellation of deeds executed by her to plaintiff on the 6th day of April, 1906, purporting to convey her community interest in the property in controversy on the ground that they were procured by fraud and undue influence on the part of plaintiff. It was also alleged in the answer that Mrs. Lindly was entitled to a life estate in the property, the reason for which is not given, but appears from the answers of the defendants other than Mrs. Lindly. As the reason for the appearance of the next friend it was alleged that Mrs. Lindly was eighty-eight years of age and so weak and infirm in mind and body that she was unable to comprehend her rights of property or to manage her affairs, and that the answer previously filed in her name had been procured by fraud and undue influence of plaintiff. The answer prayed for the cancellation of the deeds and for the appointment of a receiver to take charge of and manage the farms.

On the 6th day of May, 1907, two motions were filed to strike out the answer just stated, one by the plaintiff and one in the name of Mrs. Sallie Lindly, signed by an attorney for her. The ground stated in the motion of plaintiff is that "neither Jernigan nor anyone has authority on his own motion to represent her as next friend," if she is of weak mind, which is denied. The reasons assigned in Mrs. Lindly's motion are that Jernigan had no authority to act as her next friend; that she was in court by herself and by counsel of her own choice and was able and competent to look after her own interests, and Jernigan was not authorized by her to file the answer. On the same day the defendants other than Mrs. Lindly, including Jernigan and wife, filed answers in which they alleged, in substance, that prior to January 28, 1899, Jahu Lindly and wife had conveyed to plaintiff, as gifts, lands out of their community estate, and that on that day Jahu Lindly executed and delivered a deed which was accepted by Mrs. Sallie Lindly and the other grantees, by which he conveyed, in consideration of love and affection, a life estate in the lands in controversy to Mrs. Sallie Lindly, and the remainder in fee, to be equally divided between them at her death, to those of their children to whom land had not previously been conveyed as gifts; that Mrs. Lindly had claimed the land under this deed until her husband's death, which occurred March 19, 1906, and for some time thereafter; that these defendants had never received any gifts as referred to in the deed, and that therefore the land belonged to Mrs. Lindly for

life and to them in fee after her death, and plaintiff had no interest in it. On the same day Mrs. Lindly, by attorney, filed a supplemental answer in which she excepted to the answer filed by Jernigan as next friend because it showed no authority in him so to act, and in which she denied the allegations of that answer, and specially alleged that, while she is aged and infirm in body, she is and has at all times been of strong mind and memory, competent to transact business, and capable of understanding her property rights and of dealing with reference thereto; that she understood the answer filed by her and the deed which she made to her son, which was done of her free will and accord, without undue influence or persuasion on part of plaintiff or anyone else; and that it was and is her desire that he have her undivided interest in the land. At the same time the plaintiff filed a reply to the plea of Jernigan as next friend denying all of its allegations; and also filed a reply to the answer of the defendants setting up the deed from Jahu Lindly, and alleging that it conveyed only his half of the land, but that if it purported to convey all, Mrs. Lindly understood it to convey only her husband's half, and, if she ever accepted or acted on it, she did so in that belief and in ignorance of the fact that it affected her interest, and without any intention of giving up her interest; that she and her husband, at the date of the deed, were over eighty years of age and her life expectancy so short that a life interest was of but little value, while her community interest was worth $15,000; and that Jahu Lindly and his wife continued thereafter to live together as husband and wife in the possession and use of the land for six or seven years and until his death.

On the 7th day of May, 1907, the motions to strike out the answer of Jernigan as next friend were overruled and exceptions were reserved. The record contains nothing showing affirmatively what was or was not done by the court, in acting on the motion, to ascertain facts upon which might depend the propriety of allowing Jernigan to act in the capacity of next friend for Mrs. Lindly.

The cause was tried by jury and was submitted to them upon special issues, one of which directed them to find whether or not, at the date of the deed from her to plaintiff, April 6, 1906, she was incapable of understanding and appreciating her property rights to such an extent as to render her unable to exercise her free and unbiased will with respect to same; and another of which stated this question: "At the time of the execution of the deeds by Sallie Lindly to John Lindly on the 6th day of April, 1906, did Sallie Lindly have sufficient mental capacity to understand and appreciate her property rights and the nature and effect of said deeds." Both of which were answered by the jury in the negative. Issues were also submitted intended to determine the effect of the deed of Jahu Lindly to Sallie Lindly and certain of their children. The facts found by the jury concerning that deed were, in substance, that it was delivered and assented to by all of the grantees and that Mrs. Lindly accepted it and claimed the land under it, but that she did not know or believe that the acceptance of it would in any way affect her community interest in the land.

The plaintiff in error complains of the overruling of his motion to strike out the plea of Asa Jernigan, wherein, as next friend, he attempted to represent Mrs. Lindly. The facts set up in the plea undoubtedly were such as to make it proper for the court, if it found them to be true, to see that her interests were properly protected by some fit person. Article 1211, Revised Statutes, requires the appointment of guardians *ad litem* for minors, lunatics, idiots, or persons *non compos mentis,* where they are defendants. Mrs. Lindly was neither, unless, by a liberal interpretation of the words *non compos mentis,* they could be held to embrace a person whose mental condition is such as hers was alleged to be. It is unnecessary that this be definitely determined, for reasons which will be stated later. But we may say that the rules of practice in courts of equity permit the representation by next friend of parties to suits who, though not *non compos mentis,* are, by reason of mental or bodily infirmity, incapable of properly caring for their own interests in the litigation. Lamb v. Lamb, 23 Atl., 1009; Owings Case, 17 Am. Dec., 311; Howard v. Howard, 1 L. R. A., 610; Isle v. Cranby, 64 L. R. A., 513, and authorities cited in note to last case. And it would seem that, where the court permits this to be done and there is no other objection to the proceeding but that the representative was not expressly appointed as guardian *ad litem,* this ought not to furnish sufficient reason for disturbing the judgment.

It is urged that it was not competent for the court, upon the mere allegation of the incapacity of Mrs. Lindly, which was controverted by her, to take from her the management of her own affairs without inquiry into the truth of the allegation. If she were the party complaining and the record showed that which is assumed in the contention, that the court made no such inquiry, it may be that it would have to be sustained.

In the cases of Howard v. Howard and Isle v. Cranby, supra, conditions very similar to those in this record were presented. In the first case Mat Howard, as next friend of Elijah Howard, brought suit against John Howard for the purpose of setting aside a deed executed to him by Elijah Howard, on the ground that the latter, when he made it, was from age and disease too weak in mind to understand its nature and to resist the arts of the grantee, who exercised them for the purpose of defrauding the grantor into making it. Elijah Howard filed an affidavit, that he was not of weak or unsound mind; that he understood the nature of the deed; that it was for a valuable consideration and he wished it to stand; that the suit was instituted without his authority and he wished it dismissed. He accordingly moved the court to dismiss it, but the court overruled his motion. He then tendered and asked leave to file an answer in which he set up the same facts, but the court overruled the motion to file it. In the other case, Isle, as next friend of Henrietta Sackman, presented a bill against Cranby to compel the latter to account for property in her possession belonging to Sackman, which bill was accompanied by a motion for the appointment of Isle as next friend to represent Sackman, on the ground that the latter, because of unsoundness of mind, was incapable of caring for her estate.

The appointment was made and the bill was filed, and thereupon Sackman appeared by solicitor and moved the court to dismiss it. Isle, the next friend, then moved the court to set the motion to dismiss down for a hearing for the purpose of determining the mental condition of Sackman. The court refused to do this and dismissed the bill. Upon appeal the action taken in each case was held to be erroneous, in the first case, by the Court of Appeals of Kentucky, and in the second by the Supreme Court of Illinois. Each court held that the jurisdiction of the trial court to entertain the suit by next friend was not ousted by the objection of the person represented, and both held that inquiry into the mental condition of that party should have been made in order to determine the propriety of allowing the next friend, rather than the person he assumed to represent, to control the proceeding. The Kentucky court used this language, which, in most part, was quoted with approval by the Illinois court:

"The law presumes an adult person to be of sound mind and capable of managing his own affairs; and the mere fact that it is alleged in a petition by a person styling himself 'next friend' that a particular individual, who is an adult, is of weak or unsound mind, and not capable of taking care of his own affairs, does not destroy that presumption. Such petitions are brought in the name of the person alleged to be of weak or unsound mind, by his next friend; and it is to be presumed, in the absence of anything appearing to the contrary, that whatever consent to the bringing of the suit such person is capable of giving has been obtained, and that it is in fact his suit—for it is really in his name—and that he has obtained the consent of a friend as the most competent person, by whom he wishes his case to be conducted in order that his rights may be the better protected. But he makes known to the court that it is not his suit; that he is competent to take care of his own affairs; that the supposed friend is in fact an intermeddler.

"The court, in such a state of the case, is presented with the question: What is the proper course to pursue? The individual liberty of the person is involved. His right to dispose, by himself (provided he does not interfere with the rights of others), of his property, by sale, gift or otherwise, as he pleases, is at once recognized as an absolute right, which he can not be deprived of by any court of the land—not even the highest—unless it be made to appear that he by age, disease or other cause has ceased to be a man by so far losing his mind as to be incapable of taking care of his property, and has become the victim of shrewd and designing persons. But when he puts in issue the fact that he has thus ceased to be a man, and has become a mere hulk, how is the fact to be determined? It seems to us that the issue which thus involves his personal liberty should be settled by his peers—a jury of his country; or for that purpose the chancellor should issue his writ out of chancery, directing an inquiry by a jury into the fact as to whether the mind of the person was so impaired by age, disease, or otherwise as to render him incapable of understanding and appreciating his property rights to such an extent as to render him unable to protect himself against designing

persons; and upon the verdict of the jury, if in the affirmative, the chancellor should appoint a committee for the person, and allow him to prosecute the suit in his name; but if the verdict should be in the negative, then the suit should be dismissed unless the court, from the evidence before the jury, should deem it proper to take other steps in reference to the matter. It will be readily seen from what has been said that the chancellor erred in not, upon the issue raised by Elijah Howard, taking the course above indicated."

The Illinois court reached the same conclusion as to the necessity of an inquiry, but held that it was permissible either for the judge, acting as chancellor, to make it, or for the question as to mental capacity to be submitted to a jury. This would seem to be correct under the equity practice (Smith v. Carll, 5 Johns. Ch., 118), but whether the right of trial by jury upon such an issue would exist under our law is a question of importance which we are not now called upon to decide.

If Mrs. Lindly herself were now before this court complaining of the action taken below, we should have difficulty in finding in the record affirmative evidence of error. All presumptions consistent with the record are in favor of right action on the part of the trial court, and parties claiming error must make it appear by the record. It does not appear that other action was invoked upon the question of Mrs. Lindly's mental condition than that taken upon the motions to strike out Jernigan's plea, and, as to them, it only appears that they were overruled. It might be presumed that the court sufficiently inquired to inform itself of Mrs. Lindly's ability to act for herself. It is said that Jernigan was adversely interested, and it is true that, as the pleadings stood, he appeared to have interests through his wife adverse to the claims of Mrs. Lindly; and it is also true that courts should not allow the representation of parties to suits by those adversely interested, but should see that such representatives are not only disinterested but are fit and competent. But it appears that Mrs. Jernigan in fact had no interest in the property in litigation and admitted the fact in the course of the trial, having received her portion of her parents' estate before any of these controversies arose; and, for all the record discloses, this may have been brought to the attention of the court before it acted on the motions.

But we are of the opinion that the plaintiff in error has no right to complain of the action taken in reference to Mrs. Lindly. This question, also, was decided in Howard v. Howard, before referred to. In that case Elijah Howard appealed, but died, and his heirs became parties in his stead before the appeal was decided, and asked that the judgment setting his deed aside be affirmed. The court held that John Howard, the grantee in the deed, could not complain of the error committed against Elijah, and that the only question remaining was as to the sufficiency of the evidence to sustain the judgment annulling the deed. Since Mrs. Lindly did not appeal in this case, it may be assumed that she is satisfied with the judgment, and we can not agree with the contention that there was no evidence to justify the cancellation of the deed from her to plaintiff in error.

There was evidence to justify the submission of all of the special issues passed upon by the jury involving the validity of that deed.

The remaining contentions of plaintiff in error raise questions affecting the validity of the deed from Jahu Lindly to Sallie Lindly and others. The mere reading of the deed makes it evident that it undertook to convey the entire title to the several tracts of land, and not merely the half interest of Jahu Lindly therein. It speaks for itself and must operate according to its terms. There being no pleadings or evidence that it was executed in fraud of the rights of Mrs. Lindly, or that she was incapable of understanding its terms when it was delivered to and accepted by her, her testimony and the finding of the jury that she did not understand that it affected her community interest can not be allowed to limit its effect.

It is further contended that such a deed between husband and wife is invalid in law. To this we do not assent. It must be admitted that the husband has power to convey to the wife community property and thereby make it her separate property. It must likewise be admitted that parents have power to make advancements or gifts to their children out of their community estate. When the property so advanced or given is land, the only person who can convey it is the husband. Hence, if Jahu Lindly had conveyed the entire estate in these lands to either the wife or the children, the deed could not be questioned on the ground merely of want of power in him to convey. In what way does the fact that, with the consent of all parties, such estate was divided into a particular estate for life and a remainder affect his power to convey it? It may be answered that, while the wife, because of her capacity to acquire and hold property in her separate right, has capacity to accept a deed from her husband which merely conveys to her, she has not capacity to agree to one by which the husband undertakes to convert her half interest in community property into a life estate in the whole and to convey the remainder to others. But this leaves out of sight the unquestioned power of the husband to convey to the children. Certainly that power includes the one to limit the grant to the children so that it will vest in them only the remainder preceded by the particular life estate vested in the wife. This power of conveyance in the husband is, of course, subject to a limitation that will restrain him from defrauding the wife of her rights in the community estate, but no case is made to defeat this deed upon such a ground. If there is any limitation but this upon his power to dispose of community lands, it is not found in the principle which denies the capacity of the wife to contract generally. The capacity which she has to take title through conveyances from the husband, which capacity is fully established by the decisions of this court, includes that to contract with him so far as it is involved in consenting to and accepting the deeds. We have no question in this case as to the power of the husband to divest her interest in community lands otherwise than by deed consented to and accepted by her, through which they have exercised their right to make provision for her and at the same time for their children. We can entertain no doubt of the existence of that power.

Finding no error which entitles plaintiff in error to a reversal, the judgment will be affirmed.

*Affirmed.*