### CAUBLE v. BEAVER-ELECTRA REFINING CO. (No. 1979.)*

(Court of Civil Appeals of Texas. Amarillo. May 31, 1922. Rehearing Denied July 1, 1922.)

Husband and wife ⚖160, 266, 268(7)—Agreement between spouses that wife's earnings in oil business should belong to her made them her separate property; wife's separate estate, and not husband, liable for fuel oil furnished as necessary to business in which she was engaged.

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 4621, 4622, 4624, as to wife's separate property and its liability for debts, an agreement between husband and wife that she might engage in the oil business, and that all profits and revenues derived therefrom should be her separate property, which agreement was thereafter observed by both parties and actually carried out, and their rights under which were respected and recognized by subsequent divorce decree, was valid, and rendered property acquired by her, after making such agreement,

---

her separate property, not community property, whether the property was acquired as the result of her personal earnings or by reason of her operations in the oil business, and hence such property was liable for an account for fuel oil supplied to her which was necessary to the proper management and protection of the business in which she was engaged, and the husband was not liable therefor. .

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by the Beaver-Electra Refining Company against Mrs. S. O. Cauble. From judgment for plaintiff, defendant appeals. Affirmed.

Weeks, Morrow & Francis, of Wichita Falls, for appellant.

Aynesworth, Williams & Watkins, of Wichita Falls, for appellee.

HALL, J. The appellee, a joint-stock association, sued H. F. Cauble and wife, Mrs. S. O. Cauble, on an open account for fuel oil in the sum of $4,452.68. In addition to the formal allegations necessary in a suit upon an open account, the plaintiff alleged:

" "That the defendant, S. O. Cauble, is a married woman and has a separate estate, and that in acting in this matter that she has acted under the name of the ·Cauble Oil Company; that in truth and in fact it is a trade-name for herself and her husband, the other defendant herein, and that she has acted for and in behalf of her separate estate and for her husband, and that he was acting for her and for himself jointly, and that as such they are partners in business. That each and the separate estate of the said S. O. Cauble became liable, bound, and promised to pay to this plaintiff the full amount of said· claim, and for all of which this suit is here now brought," etc.

There is a further count based upon an account for $2,577, which was abandoned during the trial. Mrs. Cauble answered by general demurrer and by special answer, alleging, in substance, that at all the times mentioned in the plaintiff's petition she was the wife of H. F. Cauble and living with him; that during such time she engaged in business upon her own account, buying and selling oil leases, drilling oil wells, and engaging in the oil business generally; that in said acts she was in no way joined by her husband, was not acting as his agent, and he had no interest whatever in such enterprise; that she was to have the profits and was to stand the losses, if any, sustained by reason of such business; that she engaged in said business without the consent of her husband, and he was ·not· a party to her transactions in any way; that the items sued for were not necessaries for herself and children, and were not such articles as she could bind her husband for, nor could she legally bind herself; that she now repudiates said contract, de-

clines to be bound by same, and for such purpose pleads her coverture. She further alleges that she had no separate estate except her separate business in drilling oil wells and buying and selling oil leases, and that any such contract, made in the course of said business during coverture, is not enforceable under the laws of this state. H. F. Cauble filed a separate answer, alleging substantially the facts set out by Mrs. Cauble, and further that he did not receive any benefit from any of the business transactions in which she was engaged, and denies that he was a partner with his wife in any of the enterprises out of which the indebtedness grew; that he had no knowledge of the transactions; that she neither consulted with him nor was authorized by him to engage in the business; that he has not ratified nor confirmed the obligation in any way. The allegation denying partnership is verified. The case was tried to the court without a jury. The substance of the findings of fact and conclusions of law is as follows:

(1) The merchandise described in the petition was sold to Mrs. S. O. Cauble at her special instance and request.

(2) That the market value thereof was $4,-452.68; that Mrs. Cauble had ordered said goods to be delivered to her employees.

(3) Plaintiff's charges are reasonable, just, and fair, and that the items sued for were reasonable and proper and necessary for the preservation, protection and benefit of the separate estate of Mrs. Cauble.

(4) That on or about the ―――― day of ――――, 1918, and for some time prior thereto, Mrs. Cauble had been extensively engaged in the oil business upon her own separate account, with the mutual understanding between herself and her husband that whatever profits she made therefrom were to belong to her personally, and that she should pay any losses out of her own separate estate; that H. F. Cauble should have any and all profits and stand any and all losses which might result by reason of his own separate business; that all property acquired by Cauble and his wife was so acquired after their marriage.

(5) That during the year 1918, and prior thereto, up until the trial of this cause, Mrs. Cauble engaged in the oil and gas business and well drilling upon her own separate account, from which she derived large sums of money, aggregating about $48,000; that she did engage in drilling oil wells and producing oil, and that it was necessary and proper for her and her separate estate, which she had theretofore acquired, to have the goods, wares, and merchandise sued for the operation of her drilling machinery and for the exploitation and development of various and sundry leases which she then held.

(6) That the items shown in the exhibit to the petition were used by her in the develop-

ment of her individual leases and in the operation of her drilling machinery upon her own leases and leases owned by other parties adjacent thereto, which she was developing; that all of said items were proper and necessary and beneficial in the development and preservation of her own separate estate, and every item thereof was a proper and necessary charge against her separate estate, and that she intended to bind her separate estate in the purchase thereof.

(7) That H. F. Cauble was fully advised at the time of the purchase made by his wife, and had assured the plaintiff after said merchandise was purchased that Mrs. Cauble would pay for same, and that at the said time he was acting as agent of his wife, Mrs. Cauble, so constituted her agent by Mrs. Cauble, to act for her and in her behalf, with respect to the matters in suit.

(8) Since the institution of this suit Mrs. Cauble has filed in the district court of Wichita county a suit against her codefendant, H. F. Cauble, for divorce, praying for dissolution and annulment from the bonds of matrimony, and since the institution of this suit it has been heard, divorce granted, and she is now a feme sole; that in said cause the parties carried out their agreement theretofore entered into, and in the divorce decree Mrs. Cauble was given all of the property which she had acquired, and to H. F. Cauble was decreed the property which he had accumulated in the separate business; that in accordance with the decree Mrs. Cauble has retained the leases which she was developing with the fuel oil which plaintiff had sold to her; that all the profits she had made in all transactions since their agreement in 1918 had been decreed to her as her separate estate; that the rights of third parties or creditors have not been jeopardized by their agreement so entered into in the year 1918, and that the agreement was binding upon them, and is given full force and effect by this decree; that it was the intention and purpose of Mrs. Cauble and her then husband in entering into said agreement to make the net profits from the separate enterprises of Mrs. Cauble her separate and individual estate; and that the same purpose existed as to the profits derived by H. F. Cauble from his separate estate; they further intended that Mrs. Cauble and her separate estate should become and be held liable and bound for any and all debts and expenses necessary and proper or incident to her said operations, and that her separate estate should be liable therefor, it being further understood that the profits and earnings from each one's individual effort should be the separate estate of each respectively; that H. F. Cauble did not in any manner authorize the purchase of the goods, wares, and merchandise for himself; that the same were not necessaries for his wife, save as to the improvement and development of her separate estate.

The court concludes as a matter of law:

(1) That, inasmuch as plaintiff furnished the items for the improvement of Mrs. Cauble's separate estate, and which became her separate estate, in virtue of the aforesaid agreement and decree of the court, she is personally bound by her contract to pay for the same, and her separate estate is liable and chargeable in law for the value of such goods, wares, and merchandise as were reasonable and proper and necessary expenses incurred in the preservation, protection, management, control, and disposition of said respective separate estates.

(2) That the items sued for were proper and necessary charges in the preservation, protection, improvement, and management of the separate estate of Mrs. Cauble, and that she is personally bound to pay for the same.

(3) That H. F. Cauble is not personally liable thereon, and that the plaintiff take nothing as against him.

Judgment was rendered against Mrs. Cauble for the amount sued for.

The first proposition is to the effect that the evidence is insufficient to support the court's finding that the fuel oil sued for was reasonably necessary for the care, preservation, and protection of the separate estate of Mrs. Cauble, because the undisputed evidence shows that the oil was bought by her for the benefit of the community estate of herself and her husband, H. F. Cauble, and that none of the leases or rigs where said oil was used was her separate estate, but were community property, being acquired during coverture.

The second proposition is that the evidence is insufficient to support the finding that the fuel oil was reasonably necessary for the preservation, care, and protection of Mrs. Cauble's estate, and that the undisputed evidence shows that the fuel oil was bought for speculative purposes, and used in developing oil and gas leases which defendant was engaged in drilling.

By the third proposition it is contended that, even if the fuel oil was reasonably necessary for the proper preservation, care, and protection of the separate estate of Mrs. Cauble, nevertheless she was a married woman, and as such is not bound in law to pay for the same, because she had not the legal capacity to make an enforceable contract for it; and by the fourth and last proposition it is insisted that as a married woman she cannot personally bind herself to pay for fuel oil bought for the purposes stated, and that a personal judgment against her on account of such purchase is erroneous. These propositions will be considered together. It is not shown that the disabilities existing by reason of Mrs. Cauble's coverture had been removed under the provisions of article 4629a, V. S. C.

S. et seq., so the rights of the parties must be determined regardless of these articles of the statute. It is provided by article 4624, V. S. C. S., that the personal earnings of the wife and the income and revenues from her separate property shall be subject to the payment of debts contracted by her. Article 4622 gives her the right to manage and dispose of her personal earnings, subject to the provisions of article 4621, which articles provide that all property acquired by the wife by gift, as also the revenue thereof, shall be her separate property, and vest her with the sole right to manage and control it and to dispose of it under certain restrictions. This article provides that the community property shall not be liable for debts contracted by the wife alone. The first inquiry which arises is: Did property acquired by her in the oil business become her separate property, or was it the community property of herself and husband? The articles of the statute above referred to clearly imply that the wife may acquire separate property as the result of her personal earnings, and that she has the right to manage and dispose of such earnings, and it is also clearly stated that any property acquired by gift, as also the rents and revenues thereof, constitutes her separate property, of which she has the sole right of management, control, and disposal. In Lindly v. Lindly, 102 Tex. 135, 113 S. W. 750, the Supreme Court declares that the husband has the power to convey community property to the wife, and thereby make it her separate property. To the same effect is the holding in Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 507 (writ of error refused). While the property referred to in these cases was in esse, the status of the property is the same, where an agreement that property to be after acquired shall be separate property is acted upon, and the rights of third parties are not affected by the agreement. The evidence supports the court's finding that Cauble and wife agreed that she might engage in the oil business, and that all profits and revenues derived therefrom should be and remain her separate property. This agreement was thereafter observed by both parties, and actually carried out. Their rights under such agreement were respected and recognized by the decree of the court in the divorce proceeding between them, which was entered about 10 days before the judgment in this case. This state of facts brings the instant case within the rule announced in Armstrong v. Turbeville (Tex. Civ. App.) 216 S. W. 1101. The case of Crutcher v. Sligar (Tex. Civ. App.) 224 S. W. 227, is one where two married women entered into a partnership agreement, in virtue of which they acquired certain oil leases. The suit was for partition, and Conner, C. J., upheld the contract, declaring that it was legal, and was not to be classed as an ordinary commercial partnership. While it appears that one of the married women acted under power of attorney from her husband, the other acted independently, and her right to contract was maintained. The same court in Scott v. Scott (Tex. Civ. App.) 170 S. W. 273, held that the right given the husband by Revised Statutes 1911, art. 4622, to control and manage the community property, was extinguished as to prior as well as subsequent personal earnings of his wife by V. S. C. S. 1914, art. 4622. In Whitney Hardware Co. v. McMahan (Tex. Civ. App.) 231 S. W. 694, Greenwood, Justice, construed the act of 1913, c. 32 (V. S. C. S. 1914, arts. 4621, 4622, 4624), as eliminating the express grant of capacity to incur obligations for expenses for the benefit of a married woman's separate property, but held that as enacted it enlarged her rights and powers, by giving to her the sole management, control and disposition of her separate property, both real and personal, subject to provisions as to the incumbrance, conveyance, or transfer of certain portions thereof, and by placing her personal earnings under her control and management, with the sole power of disposition, subject to certain restrictions. That was a case where Mrs. McMahan owned a building which needed repair. She made a contract to have the roof repaired, and during the work there was a rainstorm, which resulted in damage to the property of her tenant's stock of goods in the house at the time. It was contended that she had no authority to contract for repairing the roof, and was not liable in tort for the resulting damages. The court said:

"As incidents to the wife's power of exclusive management and control of her separate property and of the specified portions of the community, she became vested with all such contractual powers relative to same as is requisite to make her power effectual. * * * The power granted by the statute to Mrs. McMahan to manage and control the store building belonging to her separate estate, and the rents to be derived therefrom, carried with it incidental and collateral power to make a contract with her tenant to repair the store building and to employ others to make needed repairs. She would be liable for the breach of her contract," etc.

The rights of community creditors are not involved in this controversy, and no reason is shown why the intentions of Cauble and wife, with reference to the status of the property acquired by her, should not be given controlling effect. The record does not disclose what portion of the property so acquired by her and constituting her separate estate is the result of her personal earnings and what portion may have been acquired by reason of her operations in the oil business. In either event, we think all of her estate, by reason of the common intent of herself and husband, which was enforced by the decree

of divorce, is unquestionably her separate property. Since the fuel oil was necessary to the proper management and protection of the business in which she was engaged, she should be held responsible for the payment of the account. We think the court also correctly held that no part of the amount sued for was chargeable to the husband.

The judgment is therefore affirmed.

### Findings of Fact.

First. Mrs. S. O. Cauble, at the time the fuel oil in question was purchased from the Beaver-Electra Refining Company, was engaged in the oil and gas business, during the course of which she purchased said fuel oil from the Beaver-Electra Refining Company, and used the same on three rigs owned by her and on one rig that she was operating jointly with other parties, who owned the rig.

Second. The fuel oil in question was used on four rigs, three of which were owned by Mrs. Cauble; that one rig was used on the Day lease which Mrs. Cauble was drilling under a contract whereby she was to acquire an interest in the lease for the sum of $50 per acre, and the drilling of an oil well thereon; that another rig on which this fuel oil was used was engaged in drilling a well on the Tuttle lease, with reference to which Mrs. Cauble had made a contract, whereby she was to drill the well and pay all expenses thereof, and was then to receive some acreage adjoining the Tuttle lease on completion of the Tuttle well, and be reimbursed for her expenses; that the third rig on which this fuel oil was used was engaged in the drilling of a well on a lease owned by an oil company, with which Mrs. Cauble had a contract to drill the well for an interest in the lease; and the fourth rig on which a part of the fuel oil was used, and which was not owned by Mrs. Cauble, was engaged in drilling a well on the Ferguson lease, which was not owned by Mrs. Cauble, and that Mrs. Cauble was assisting in the financing of such drilling operation for the purpose of proving up the value of adjoining acreage in which she owned a part interest.

Third. The fuel oil in question was used by Mrs. Cauble in a business venture carried on by her, separate and apart from her husband.

Fourth. The divorce decree and property settlement between H. F. Cauble and wife, S. O. Cauble, was made approximately nine months after the purchase of the fuel oil in question.

HUFF, C. J. On account of the death of Judge HALL'S father, Judge HALL requested that one of the members of the court file findings of fact as requested. The above findings are made by myself, upon such request.