**GRAHAM'S ESTATE et al. v. STEWART et al. (No. 12066.)\***

Court of Civil Appeals of Texas. Fort Worth.
Jan. 5, 1929.

Rehearing Denied Feb. 9, 1929.

Kay, Akin & Smedley, of Wichita Falls, and S. A. Penix, of Graham, for appellants.

Marshall & King, Fred T. Arnold, and C. W. Johnson, Jr., all of Graham, and J. F. O'Brian, of Fort Worth, for appellees.

DUNKLIN, J. This was a suit in the form of trespass to try title to recover certain tracts of land constituting a part of the James R. Tanner survey, situated in Young county. Mrs. Carrie G. Stewart and the executors and trustees of the estate of C. W. Johnson, deceased, who were heirs and devisees of G. A. Graham, deceased, are plaintiffs, and the heirs and legal representatives of the estate of E. S. Graham, deceased, are defendants. Plaintiffs recovered judgment for title to the land sued for; the recovery being by them jointly for several tracts of the land in controversy and by them separately for other tracts. The defendants have prosecuted this appeal.

On February 12, 1874, G. A. Graham and E. S. Graham were joint owners of the fee-simple title of the James R. Tanner survey and other lands in Young county. They were brothers and imigrated to Texas from the

*Writ of error refused.

state of Kentucky. In 1874 they, as partners, established and operated the salt works, near the town of Graham, on the James R. Tanner survey, then jointly owned by them.

The following instruments, executed by G. A. Graham and E. S. Graham, were introduced in evidence, and for convenient reference hereinafter will be designated as Exhibits A, B, C, and D:

A. "This deed made and entered into this 13th day of February A. D. 1874, by and between Gustavus A. Graham and Edmonia his wife of the County of Young and State of Texas of the first part and Edwin S. Graham of the City of Louisville and State of Kentucky of the second part, Witnesseth that the said Gustavus A. Graham and his wife for and in consideration of the sum of ($6,314.87) Six Thousand Three hundred and fourteen and 87/100 Dollars in cash in hand paid the receipt of which is hereby acknowledged and the further consideration of the relinquishment by the said E. S. Graham of his half interest in that certain tract of land situated in Young County, Texas, on Salt Creek and known as the J. R. Tanner survey containing 300 acres the Saline or Salt privileges of the said survey is reserved to and shall belong exclusively to the said E. S. Graham, and the further consideration from the said E. S. Graham of certain lots in the town of Graham and two certain parcels of land one of which shall be out of the tract of land known as the Mathew Dunn survey of 160 acres and the other parcel out of the G. Cox 177 acre survey all of which are situated in Young County, Texas. The said town lots and two parcels of land the said E. S. Graham is to convey by Deed to the said G. A. Graham.

"Have bargained and sold and by these presents do convey and confirm unto the said E. S. Graham his heirs and assigns forever two certain parcels or surveys of land lying in the County of Young and State of Texas on Salt Creek one of the surveys known as the Mathew Dunn 160 acre tract and the same conveyed by A. B. Gant to E. S. and G. A. Graham July 17, 1871, the other known as the G. Cox 177 acre survey being the same conveyed to E. S. and G. A. Graham by S. S. Mathews and R. H. Mathews and of record in Young County, deed book p 1 page 122.

"To have and to hold the two said certain parcels or surveys of land with all their appurtenances and which specially includes the salt works, all tools and implements and fixtures, books, papers and stock of salt bags, etc., on hand on the premises unto the said E. S. Graham, his heirs and assigns forever with covenant of General Warranty. And the said G. A. Graham does further covenant with the said E. S. Graham that he will warrant and forever defend the title to the foregoing described tracts of land and premises from the claim of any that may be preferred therefor and all persons whomsoever.

"In testimony whereof the said G. A. Graham and wife have hereunto subscribed their names the day and year first herein written.

"G. A. Graham.
"Edmonia Graham.

"Witnesses:
"S. R. Jeffery.
"W. Hurford.
"W. T. Ditto."

B. "This deed made and entered into this 14th day of February A. D. 1874, by and between E. S. Graham of the City of Louisville and State of Kentucky of the first part and Gustavus A. Graham of Young County, State of Texas, of the second part. Witnesseth that the said E. S. Graham for and in consideration of One Dollar cash in hand paid, the receipt whereof is hereby acknowledged has bargained and sold and by these presents do convey and confirm unto the said G. A. Graham his heirs and assigns forever all of the following mentioned lots in the town of Graham in Young County, State of Texas, as shown and bounded by streets and alleys and by the plat of the said town or record, in Young County Deed Book, A Vol. 3 page 382, and as shown on the plat of E. S. Graham's addition to said town, to wit: All lots that front on West Street and South of Fourth Street, also lots Nos. 1, 2, and 3 on West Street in Block No. 43, also all lots that front on Pecan Street except the one occupied by J. H. Wilson, also all lots that front on Oak Street except lot 1 in Block four, and Lot No. 32 in Block twenty-one, also all lots that front on Cherry Street and South of Fourth Street, also all lots that front on Fourth Street west of and including west half of Block one, except the lot occupied by P. Brewer, being Lot No. five in Block eleven, also all lots that front on Third Street and West of Oak Street, also all lots that front on East Street, also the said E. S. Graham half interest in that certain tract of land lying in Young County, Texas, and known as the J. R. Tanner Survey containing 300 acres being the same conveyed by A. B. Grant to E. S. & G. A. Graham the said E. S. Graham reserves exclusive for himself all its saline or salt water privileges, Also so much of and out of what is known as the Mathew Dunn 160 acre survey as may be embraced in this boundry, to wit: Beginning where the south line of G. A. Graham's preemption connects and corners in the west line of the said 160 acre survey, thence east to the middle of salt creek. Thence meandering up said creek until it connects (and is made a corner) in the north line of said 160 acre survey, thence west to the northwest corner of said survey, thence south to the beginning, also so much out of the G. Cox 177 acre survey as may be embraced in the following boundaries viz: Beginning at the northwest corner of said survey, thence with its north boundary line to the northeast corner of said survey, pro-

vided said corner is not across salt creek otherwise connecting with the east boundary line of the G. Cox 177 acre survey and following it south to a point in the middle of salt creek, thence meandering down it to the west line of said survey and cornering at Vardy & Tackitt's N. W. corner of 4 acre survey a bed rock in the creek marked X, thence with the west line of said 177 acre survey to the beginning, both of the last two mentioned surveys being situated on salt creek in Young County, Texas, but the saline or salt privileges of both of the two last mentioned parcels of land are especially exclusively reserved by the said E. S. Graham and the right of free ingress and egress to and from the same and to develop work and use and utilize their salines or salt waters.

"To have and to hold the before mentioned town lots except those excepted and the aforementioned parcels of land under the reservations as stipulated into the said G. A. Graham his heirs and assigns forever, with covenant of general warranty, to forever defend the title to all of said lots and lands against all claiming or to claim by, through or under the said E. S. Graham.

"In testimony thereof the said E. S. Graham has hereunto subscribed his name the day and year first herein written.

"E. S. Graham.

"Witness:
"S. R. Jeffery,
"W. Hurford,
"W. T. Ditto."

C. "Know all men by these presents that I, G. A. Graham for and in consideration of the sum of five dollars to me paid the receipt of which is hereby acknowledged and consideration of other good and sufficient reasons have this day granted, bargained, sold and conveyed into E. S. Graham the following described land, to wit: All that portion of a certain tract of forty acres of land east of salt creek in said county, which said forty acres of land is particularly described in a certain patent issued to C. L. Stevenson and E. F. Abbott assignees of Macwell McGary on the 12th day of September A. D. 1857, which said patent is recorded in Book A, Vol. 2, page 354 of Young County records and which said patent is here referred to and made part thereof for more particular description, the said land being situated in Young County, Texas, and the portion of said acres herein conveyed being all that part thereof which lies and is situated east of Salt Creek and I further grant, sell and convey unto said E. S. Graham the saline privileges which may appurtain unto the entire forty acres above described. Save and except that said E. S. Graham shall not erect any works for the manufacture of salt upon any portion of said tract of 40 acres west of said Salt Creek. I, the said G. A. Graham, do hereby reserve the right to erect a bridge at or above the present crossing of the road on Salt Creek in said survey and I do hereby retain, to and from said crossing or wherever said bridge may be erected the right of way that is sufficient space for a wagon road. By granting the right of saline privileges above set forth it is meant that said E. S. Graham shall have the right to enter upon said land west of said creek and to dig, excavate or bore for salt, but that he shall erect no buildings or manufactories west of said creek, other than proper room for derricks and sinking of wells and their products and conducting the same to the works of E. S. Graham or assigns.

"To have and to hold unto the said E. S. Graham his heirs and assigns forever.

"Witness my hand and seal this 1st day of November A. D. 1876.

"G. A. Graham."

D. "Know all men. That through misunderstandings and pecuniary differences have existed between us, E. S. Graham and G. A. Graham, We have by virtue of deeds of conveyance and otherwise fully cancelled and settled all debts and obligations of debt, and choses of action of whatever kind between us to date of this and hereby acknowledge the same, and bind ourselves and heirs forever, Amen. And further, through certain deeds of conveyance to lands to say: One from E. S. Graham to G. A. Graham of date February 14, 1874, and of record in deed Book A, vol. 3, pages 512-13 and one from G. A. Graham to E. S. Graham of date February 13th, 1874, and of record in deed Book A, vol. 3, page 453, and one other from G. A. Graham to E. S. Graham of date Nov. 1st, 1876, all of record in Deed Book A, vol. 5, pages 273-4, records of Young County, Texas, seize and grant unto said E. S. Graham and his assigns certain special reserved rights and privileges to excavate, drill and bore wells for salines and exclusive use and protection to and for same. Now, the said E. S. Graham hereby agrees, grants and binds himself and assigns to never excavate, dig, drill, or bore on certain parts of said lands of said G. A. Graham, that is, not on, nor nearer the summit of the main elevation or range of hills on west side of Salt Creek, than half the distance from the base of same, In consideration of which, the other good and sufficient considerations the said G. A. Graham hereby agrees, grants and binds himself, his heirs and assigns unto the said E. S. Graham, heirs and assigns, that in lieu of, and instead of simply saline as mentioned and expressed on the before mentioned deeds, the same shall mean and cover the exclusive and entire product of whatever kind and protection of and for every such product which may be obtained from the flow, or pumping of any wells which may be made or put down on said lands of said G. A. Graham as permitted, stipulated and provided in the deed referred to and as herein above further construed, set forth and granted, but

that said E. S. Graham and assigns shall erect no buildings or manufacturies on said lands other, than on proper room for derricks and sinking of wells and conducting their products across and from said lands to the factories or works on premises of said E. S. Graham or assigns.

"In full confirmation of all the aforesaid we have paid each other· the further consideration of one dollar and respectively hereby acknowledge the same. In final testimony whereof we hereunto sign our respective names to this agreement in duplicate this 24th day of March, A. D. 1877:

"E. S. Graham.
"G. A. Graham."

All of those deeds were duly acknowledged and filed for record in Young county, Tex. As disclosed by the record, the only purpose of this suit by the plaintiffs is to establish title in them as the heirs and devisees of G. A. Graham to whatever oil and gas that may be found in the land in controversy. The defendants claimed such title, especially under and by virtue of the following provisions of the deed shown above as Exhibit D, to wit: "In consideration of which and other good and sufficient considerations, the said G. A. Graham hereby agrees, grants and binds himself, his heirs and assigns unto the said E. S. Graham, heirs and assigns that in lieu of and instead of simply salines as mentioned and expressed in the before mentioned deeds, the same shall mean and cover the exclusive and entire product of whatever kind and protection of and for every such product which may be obtained from the flow or pumping of any wells which may be made or put down on said lands of said G. A. ,Graham, as permitted, stipulated and provided in the deeds· referred to and has hereinabove further construed, set forth and granted."

The case was tried before a jury and the following was the only special issue submitted to them with their findings thereon: "Did G. A. Graham and E. S. Graham intend to cover and include oil and gas in the instrument set out as Exhibit 'D' in plaintiffs' fifth amended original petition, at the time of its execution? Answer: No."

The submission of that issue was based on a special pleading by the plaintiffs. The pleading covers several pages in the transcript, but the material facts alleged therein may be briefly summarized as follows: When the four deeds mentioned above were executed, G. A. and E. S. Graham were operating salt works on the land in controversy, in which they were jointly interested, and, prior to the execution of the deed shown as Exhibit D, E. S. Graham owned only the saline minerals in the land included in that deed, which had theretofore been reserved by him in the deed shown in Exhibit B. According to plaintiffs' allegations at the time of the execution

of Exhibit D, it was the understanding and intention of the two brothers that the manufacture of salt from factories then on the property would be continued and that the quoted provision from the last-mentioned deed would grant to E. S. Graham no other minerals than salt, which had theretofore been procured from the operation of salt wells, and such other minerals as might be produced as an incident to such operation, and in case of abandonment of mining operations for salt, E. S. Graham should own no further interest of any character in the land, and that such rights or benefits conveyed to E. S. Graham by Exhibit D amounted to nothing more than an easement of right to a "profit prendre appurtenant."

According to further allegations in the pleading, after the execution of the deed last mentioned the salt works were abandoned, and by reason of such abandonment any and all mineral rights which vested in E. S. Graham by the stipulations in the last-mentioned deed reverted to G. A. Graham.

According to further allegations in the petition, after the execution of that deed the provision quoted above from Exhibit D was construed by the parties thereto as granting to E. S. Graham only the salt or saline in the land, and such gas and oil as might be incidentally produced from the wells drilled and operated for the production of salt only.

At the outset, it may be said that the evidence introduced by the plaintiffs was sufficient to support the finding of the jury upon the only issue submitted to them; all of which testimony was duly objected to by the defendants on the ground that the same was hearsay and incompetent to vary the terms of the deed as Exhibit D, which were plain and ˙ unambiguous, and the legal effect of which was to vest in E. S. Graham the legal title to all the oil and gas or other minerals that might be found in the land in controversy.

The deed shown as Exhibit D was not attached by the plaintiffs on the ground of fraud, accident, or mutual mistake. It is an elementary rule of construction that, when a deed or contract in writing is plain and unambiguous, parol evidence is not admissible to show the intention of the parties thereto, but such intention is to be determined by the court as a matter of law from the terms of the instrument. And whether or not there is an ambiguity in the instrument which would authorize the introduction of parol testimony is a question of law for determination by the court and not by the jury. Authorities almost without number might be cited announcing such rules, such as Cook v. Smith, 107 Tex. 119, 174 S. W. 1094, 3 A. L. R. 940; Davis v. George, 104 Tex. 106, 134 S. W. 326; Farley v. Deslonde, 69 Tex. 458, 6 S. W. 786; Lindly v. Lindly, 102 Tex. 135, 113 S. W. 750; Benskin v. Barksdale (Tex. Com. App.) 246 S. W. 360; Scheller v. Groes-

beck (Tex. Com. App.) 231 S. W. 1092; Baldwin v. Drew (Tex. Com. App.) 244 S. W. 987.

In Henry v. Phillips, 105 Tex. 459, 151 S. W. 533, it is held that testimony tending to vary the terms and legal effect of a deed to land, plain and unambiguous as its face, could not be given effect to vary the terms of the deed, even though the same is admitted without objection.

In Soell v. Hadden, 85 Tex. 182, 19 S. W. 1087, it is said: "If there is no ambiguity about an instrument, and the intention of the parties may be ascertained from its terms without explanation, it is the duty of the court to construe it for the jury and instruct them as to the rights of the parties. Parol evidence is not admissible to show the construction placed upon a written contract by the parties, where the intent is expressed in the writing."

In Benskin v. Barksdale, supra, the court said: "Where the terms of a deed are plain and intelligible, the intent cannot be altered by evidence or extraneous circumstances." No resort can be had to extraneous evidence for interpretation. A like ruling was made in Jarecki Mfg. Co. v. Hinds (Tex. Civ. App.) 295 S. W. 274, and McCarty v. Pugh (Tex. Com. App.) 265 S. W. 126, and Crayton v. Phillips (Tex. Com. App.) 4 S.W.(2d) 961.

It is our conclusion that the quoted provisions from Exhibit D are clear and unambiguous, and that the evidence introduced by the plaintiffs to sustain the findings of the jury were inadmissible and incompetent, and the finding of the jury thereon cannot be given any effect. The language therein used explicitly and definitely showed that G. A. Graham granted to E. S. Graham a greater interest than he had held theretofore, to wit, salines; it being in lieu and instead of simple salines, as mentioned and expressed in the before mentioned deeds, the same shall mean and cover the exclusive and entire product of whatever kind, and protection of and for every such product which may be obtained from the flow or pumping of any wells which may be made or put down on said lands of said G. A. Graham," was definite and specific, and sufficiently broad and comprehensive to include oil and gas, or any other mineral, that might be found in the land. We are unable to perceive how language could be clearer or broader in its scope. Elliott v. Nelson, 113 Tex. 62, 251 S. W. 501, in which case Luse v. Boatman (Tex. Civ. App.) 217 S. W. 1096, is cited with approval. See, also, other decisions noted in the last-cited case, in which a writ of error was denied by the Supreme Court.

In Kentucky Diamond Mining, etc., Co. v. Kentucky Transvaal Diamond Co., 141 Ky. 97, 132 S. W. 397, Ann. Cas. 1912C, 417, it is said: "It may be true that when the deed was made the parties did not know what minerals were under the land, but the fact that they did not have diamonds in mind, in no manner affects the conveyance when by it they conveyed all the minerals. When the language of the deed is broad enough to cover everything that may be found on the land, it is not material to the effect of the deed, that the parties in fact contemplated at the time that a particular thing might be found on the land."

Nor can the concluding portion of the quoted provision of the deed shown in Exhibit D, reading, "As permitted, stipulated and provided in the deed referred to and as herein above further construed, set forth and granted," be construed as showing an ambiguity or as in any manner limiting the products which might be obtained from flow or pumping the wells on the land. Evidently its only purpose was to insure to E. S. Graham beyond question the same right to drill wells on the land as had been given him by the deeds executed by G. A. Graham prior thereto, and which right was not specifically given by the terms of the clause immediately preceding. Plaintiffs' contention that the language last quoted should be construed as meaning that E. S. Graham would have no right to drill the land for any other mineral than salt, and no right to any oil or gas or other mineral except such as might be found as an incident to the drilling and operation of wells put down for the sole purpose of mining salt, is clearly untenable. Such a contention would require an unwarranted and unreasonable implication of other terms not appearing in the deed, purporting to contradict and limit the larger estate conveyed by specific and unconditional terms; all contrary to the elementary rule that a deed should be construed as conveying the largest estate its terms will permit, and that a restrictive clause will be disregarded if it is in conflict with the plain and unambiguous conveying clause. Cartwright v. Trueblood, 90 Tex. 538, 39 S. W. 931; Settegast v. Foley Bros. Dry Goods Co., 114 Tex. 452, 270 S. W. 1014; Grogan v. City of Brownwood (Tex. Civ. App.) 214 S. W. 532.

The deed shown in Exhibit D had the effect to vest in E. S. Graham the legal title to oil and gas and all other minerals in the land in controversy. The decision of our Supreme Court in the leading case of Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566, is decisive of that question. In that case it was held that an oil lease which did not in express terms convey title to the oil and gas which might be developed was a conveyance of an interest in realty. Many other decisions following that might be cited. Furthermore, the deed shown in Exhibit D in express terms did convey to E. S. Graham the legal title to all the minerals that might be produced from the land, coupled with the right to develop the land therefor by drilling operations. Such

being the rule of decisions in this state, we overrule the contention of plaintiffs in this case that the deed conveyed nothing more than an easement or right to profits à prendre appurtenant, according to the rule in other states.

■ What purported to be declarations against interest by some of the defendants could not be given any legal effect, since they held a clear title to the land, and to give effect to such parol declarations would be to hold that they could convey land by parol contrary to the statutes which require such a conveyance to be in writing.

The issue of abandonment by E. S. Graham and those holding title under him was not submitted nor requested to be submitted, and therefore was waived by the plaintiffs, even though such a defense was otherwise tenable, which we doubt, since the entire title to all the minerals was conveyed to E. S. Graham, and therefore G. A. Graham had no interest to be subserved by the development of the land for such minerals, such as the lessor usually has in the ordinary oil and gas lease; the lease being under contract to develop the land for oil and gas for benefit of the lessor in the royalty reserved. Ormsby v. Ratcliffe, 1 S.W.(2d) 1084, Supreme Court.

The plaintiffs' plea of limitation as against the defendants claiming the mineral interest in the land was overruled by the trial court and the correctness of that ruling has not been challenged by any cross-assignment of error. The questions presented in other cross-assignments of error have been disposed of in the foregoing conclusions, and therefore they are overruled.

For the reasons stated, the judgment of the trial court is reversed, and judgment is here rendered in favor of the appellants, who were defendants in the court below, for title to all the minerals, including oil and gas, which may be obtained from the flow or pumping of any wells which may be made or put down by them or their assignees on the land in controversy, together with the right to develop such land for such minerals in accordance with the terms of the deed shown in Exhibit D, copied above.

### On Motion for Rehearing.

■ We were in error in saying that the defense of abandonment by appellants was waived by the plaintiffs by reason of their failure to request the same be submitted to the jury. While there was no request for submission of that issue and the same was not submitted, the defense was not waived because we find in the record an exception sustained by the trial court to that plea.

■ However, we adhere to the conclusion reached that there was no merit in the plea of waiver, since, as stated in our original opinion, E. S. Graham had the legal title to all the oil and gas located in the land covered by the deed shown in Exhibit D, and such title could not be lost merely by abandonment, contrary to our statutes requiring conveyances of real estate to be in writing. See Phillips v. J. B. Watkins Land-Mortgage Co., 90 Tex. 195, 38 S. W. 270, 470, and authorities there cited; Rev. Stats. of 1925, arts. 1288, 3995.

We adhere to the construction of the deed shown in Exhibit D as appears in our opinion on original hearing; and we believe the conclusions we reached are further supported by the opinion of the Commission of Appeals in the recent case of Reynolds v. McMan Oil & Gas Co., adopted by the Supreme Court, reported in 11 S.W.(2d) 778.

With the correction noted above, the motion for rehearing is overruled.